MUSKEGON AGENCY, INC., *v.* GENERAL TELEPHONE
COMPANY OF MICHIGAN.

1. Telegraphs and Telephones—Negligence—Assignment of
Numbers.
Negligence of defendant telephone company in assigning to
plaintiff insurance agency a telephone number that had been
previously assigned to a large bank and publishing same
in telephone directory *held,* established beyond dispute.

2. Same—Damages—Evidence.
Proofs adduced by defendant telephone company in action against
it for negligence in assigning a telephone number, relative to
plaintiff's net income for year during which a wrong number
appeared in telephone book *held,* insufficient to render
plaintiff's proofs as to loss incurred- because of failure to
write "new" business so speculative and conjectural as to
prevent consideration thereof by jury.

3. Damages—Evidence—Instructions.
The fact that certainty in the admeasurement of damages cannot
be obtained with mathematical precision in either tort or
contract cases should not prevent the introduction of such
proof as the nature of the case permits with protective instruc-
tions as the case may require so as to prevent the allowance
of such damages as may be merely possible, too remote or
fanciful as to be safely considered as the result of the injury.

References for Points in Headnotes

[1]  52 Am Jur, Telegraphs and Telephones § 95.
Liability of telephone company for mistakes in or omissions from
its directory. 68 ALR 1325.
[3, 8]  15 Am Jur, Damages § 20 *et seq.*
[4]  52 Am Jur, Telegraphs and Telephones, § 97.
 15 Am Jur, Damages § 158.
[5]  15 Am. Jur, Damages § 352.
[5, 7]  15 Am Jur, Damages § 353.
[10]  15 Am Jur, Damages § 192 *et seq.*

4. SAME—EVIDENCE—PAST PROFITS.

Evidence of past profits of a business which had been continued for some time and which constituted a very material aid to the jury in arriving at a fair probable estimate of the loss of profits due to interruption of plaintiff's business by defendant was properly admitted.

5. SAME—EXCESSIVE VERDICT—LOSS OF BUSINESS DUE TO ASSIGNMENT OF IMPROPER TELEPHONE NUMBER.

Verdict of $16,000 for plaintiff insurance agency in its action for damages arising from assignment of improper telephone number *held*, not excessive under evidence presented, showing, among other things, loss of profits from new business that was not written of upwards of $20,000.

6. TELEGRAPHS AND TELEPHONES—ADEQUACY OF SERVICE—DAMAGES—ADMINISTRATIVE AGENCY—JURY.

Claim of error in instruction in action by insurance agency against telephone company for damages for assignment of an improper telephone number that defendant was required to furnish reasonably adequate service and jury was to determine whether or not it did furnish reasonably adequate service and facilities for period of 1 year in that the determination as to adequacy of service was a matter for the public service commission under pertinent statutes rather than a jury *held*, untenable, since only a court in accordance with due process, can constitutionally award damages in a civil action (CL 1948, § 484.101 *et seq.*).

7. SAME—INSTRUCTIONS—PROXIMATE CAUSE—DAMAGES—EVIDENCE.

Claim of error in instruction to jury in insurance agency's action against telephone company for damages sustained from assignment of an improper telephone number whereby jury was permitted to consider evidence of loss of profits for year involved by showing profits for years before, during, and after such year without being required to show the loss of any particular customer is not sustained, where evidence includes admission of fault on part of defendant by way of tender of small amount plaintiff had expended notifying customers of newly-assigned number, the issue of amount of damages being the issue yet to be determined.

8. SAME—INSTRUCTIONS—DAMAGES—LOSS OF PROFITS—EVIDENCE.

Instruction that fact that damages from loss of profits were not measured easily or with absolute accuracy would be no ground for denying same but that the loss must be shown with such reasonable degree of certainty as the situation permitted and

that the evidence must not be so remote, speculative or contingent as to be unreliable *held*, not erroneous in insurance agency's action against telephone company for assignment of an improper telephone number.

9. SAME—INSTRUCTIONS—GOOD   WILL—EVIDENCE—SPECIAL   QUESTIONS.

Instructions in insurance agency's action against telephone company for damages arising from assignment of improper telephone number that plaintiff had burden of proving, by a preponderance of the evidence that it had in fact sustained a loss of good will *held*, not prejudicial nor reversible error, where there was some testimony by an officer of plaintiff that there was loss of good will and defendant did not seek to have jury determine the question as to whether there was proof of loss of good will and to what amount by special questions.

10. SAME—MITIGATION OF DAMAGES.

The loss of "new" business to plaintiff insurance agency because of defendant telephone company's insufficiency of telephone service incident to assignment of an improper telephone number was not the subject of mitigation by reason of an increase in over-all income from other sources, since mitigation of damages must relate to the effects of the cause of such damages and not to other circumstances, hence, it was not error to admit into evidence and permit jury to consider under suitable instructions statistical records showing an increase in employment in the county.

Appeal from Muskegon; Fox (Noel P.), J.   Submitted June 5, 1957.   (Docket No. 20, Calendar No. 47,283.)   Decided October 7, 1957.

Case by Muskegon Agency, Inc., a Michigan corporation, against General Telephone Company of Michigan, a Michigan corporation, for damages arising from assignment of improper telephone number. Verdict and judgment for plaintiff.   Defendant appeals.   Affirmed.

*Poppen, Street & Sorensen (Cyrus M. Poppen,* of counsel), for plaintiff.

*Sessions & Barlow (Sidney D. Griffith,* of counsel), for defendant.

KELLY, J. Plaintiff corporation is a general insurance agency which has operated successfully in the city of Muskegon for over 40 years. Defendant is a Michigan corporation, having its principal office in the city of Muskegon, and had for many years prior to June 1, 1950, furnished plaintiff with telephone service and listed plaintiff's name and address in its directories.

On February 26, 1952, plaintiff filed its declaration, claiming damages because defendant had breached its contract in the following particulars:

"a. In failing to assign to the plaintiff in its directory issued on June 1, 1950, a telephone number separate and distinct from that issued to any other subscriber.

"b. In assigning to the plaintiff in said directory the same telephone number as that assigned to the National Lumberman's Bank.

"c. In refusing to permit the telephone in plaintiff's office to ring when persons dialed the number 2–8281 assigned to the plaintiff in said directory.

"d. In disconnecting plaintiff's telephone service in such a manner that plaintiff's telephone ceased to ring when persons desiring to call the plaintiff's office dialed number 2–8281 and in permitting said disconnection to remain effective for a period of 1 year from June 1, 1950, to June 1, 1951.

"e. In failing to list in its directory after the plaintiff's name a telephone number, the dialing of which would ring the plaintiff's telephone during the entire time said directory was in use.

"f. In failing to prevent the publication and distribution of a directory which did not list after the

plaintiff's name a telephone number, the dialing of which would ring the plaintiff's telephone the entire time said directory was in use."

The defendant in its answer denied that plaintiff had suffered any damage and alleged certain affirmative defenses. Plaintiff moved to dismiss the affirmative defenses, which motion was granted by the circuit court and on appeal was affirmed by this Court. (See *Muskegon Agency, Inc.,* v. *General Telephone Company of Michigan,* 340 Mich 472.)

At the conclusion of plaintiff's case and again at the conclusion of all proofs, defendant's motion for a directed verdict was denied. A jury found in favor of plaintiff for $16,000. Motion for new trial was denied and defendant appeals, claiming (1) that the evidence on the issue of damages was speculative and conjectural; (2) that the court erred in instructing the jury and in refusing to direct a verdict in favor of defendant, and (3) that the verdict was excessive.

Plaintiff's business steadily increased between 1946 and 1949. In December, 1949, plaintiff consulted with defendant as to how its telephone service could be augmented. Defendant informed plaintiff it could install a rotary telephone service which would permit more than 1 person to use the telephone lines at 1 time; but, in order to obtain that kind of service plaintiff would have to give up its old number (2–2874) and, because the new directory would be issued in June, 1950, defendant advised that the rotary service await the new directory; that in the meantime defendant could help plaintiff by installing an unlisted telephone for outgoing calls. Plaintiff agreed to this arrangement.

Defendant advised plaintiff in April that 3 numbers were available to it for its proposed rotary telephone system, the prime number being 2–8281, and secondary numbers of 2–8282 and 2–8283, the latter

number to be available for future expansion; and plaintiff printed the number 2–8281 on its stationery, billheads and insurance policies.

When the defendant issued its new directory on June 6, 1950, it listed plaintiff under number 2–8281 and, also, listed this number for plaintiff's president and vice-president. It became apparent immediately after the new directory was issued that plaintiff shared its new number (2–8281) with one of the 3 large banks in Muskegon; that said bank had 15 telephones in use, and had been using number 2–8281 for over 2 years.

Defendant then disconnected plaintiff from number 2–8281 and reconnected plaintiff's office with its old number. Plaintiff was disconnected from its listed number from June 6, 1950, to June 1, 1951.

Defendant advised plaintiff that it was too costly to publish a new directory, but that defendant would furnish the bank (which had the same number listed as plaintiff) with an extra trunkline, free of charge, and would make arrangements with the bank so its telephone operators would endeavor to advise callers asking for plaintiff that plaintiff could be reached at the old number. This service, however, was mainly confined to banking hours—9 a.m. to 3 p.m., with no service on holidays, Saturday afternoons or Sundays.

Plaintiff during the year (June, 1950 to June, 1951) expended $101.66 in sending, by mail, a small sticker with its telephone number listed thereon, to 1,400 of its existing customers whose policies would expire during the 1950–1951 year, and in inserting advertisements in the Muskegon papers advising the public of the number at which it could be reached. This amount was tendered by defendant to plaintiff during the trial, but was refused.

Defendant's negligence is established beyond dis-

pute and there is no claim that plaintiff was guilty of contributory negligence.

Plaintiff introduced proof of the amount of its new business for the directory year, May 31 to May 31, for the years 1949 to 1954, such proof being:

"Year Ending May 31st      Amount of Premiums
    1949                       $33,171.90
    1950                        19,670.74
    1951                        10,055.90
    1952                        20,068.19
    1953                        23,084.10
    1954                        24,582.14."

The president of plaintiff corporation made a study of its records of operations over several years and testified that on a 7-year basis the plaintiff's loss would be $20,516.74 and on a 10-year period would be $26,786.55. He endeavored to sustain his conclusion with the following testimony:

"I have made a computation of what damages we claim we would have suffered by way of new business alone if these customers we didn't get during this year of limited telephone service had actually been in our office, and in making these computations I took the 3-year premium business once every 3 years, and the 1-year business I took each year. In other words, the new business we claimed we lost in 1950 to 1951, which was 3-year business, would not come up for renewal until 3 years later, and I have taken that fact in consideration in making the computation. With respect to the loss of new business alone, plus renewals, for a period of 7 years, I took for the 3-year business the original premium and the third renewal thereof at the full loss of $1,020, and the second renewal thereof $1,020 less a calculation that's figured for discount because of advance payment if paid. The 3-year premium goes to be $2,967.27. The annual premium loss for the original and 3-year renewals would be $17,549.47, making the total loss

$20,516.74. I have also made this computation on a 10-year basis. * * *

"I have testified that on the basis of some of these statistics we might anticipate a 10-year period of renewal, and found that on damages on new business alone over a 10-year period the 3-year premium business would have shown a loss of $3,-783.27, and on the 1-year business $23,003.28, for a total loss of $26,786.55."

Defendant introduced proof to show that plaintiff's net income for the period from directory year June, 1946, to May, 1947, and for each succeeding directory year down to and including June, 1953, to May, 1954, was as follows:

| "Directory Year | Amount | Increase/ Decrease Over Prior Period | % Increase or Decrease |
|---|---|---|---|
| June 1946—May 1947 | $21,113.88 | | |
| June 1947—May 1948 | 25,538.79 | $4,424.91 | 20.95 |
| June 1948—May 1949 | 29,865.63 | 4,326.84 | 16.9 |
| June 1949—May 1950 | 26,297.15 | 3,568.48* | 11.9* |
| June 1950—May 1951 | 31,056.39 | 4,759.24 | 18.1 |
| June 1951—May 1952 | 31,852.73 | 796.34 | 2.5 |
| June 1952—May 1953 | 37,265.77 | 5,413.04 | 16.9 |
| June 1953—May 1954 | 38,506.67 | 1,240.90 | 3.3 |

* Denotes red figures"

Defendant-appellant argues that from these figures:

"It is apparent from the foregoing figures that the only time plaintiff had a decrease in its net income during the period covered by the exhibit was during the year ending May 31, 1950, when its net dropped 11.9% or $3,568.48 from the previous year. During that year plaintiff was still using its old telephone number. It is further apparent from said figures that for the period in question, from June 1, 1950 through May 31, 1951, when it was without a telephone number in the directory that would ring its office telephone, plaintiff had the second largest increase in its net income of any 12-month period in

the entire 8 years.   This was an increase of 18.1% or $4,759.24 over the preceding 12-month period, and only $796.34 less than plaintiff's net income for the succeeding 12-month period from June 1, 1951 through May 31, 1952, during which year plaintiff was again operating with a telephone number in the book which would ring its business telephone.

"Plaintiff, however, seeks to avoid this fact and to show that it nevertheless suffered a loss of income during that year.   It is plaintiff's claim that it lost new business during that 12-month period due to the fact that it was without a telephone number which it otherwise would have got."

Conceding defendant's statement that the proof above referred to cast grave doubts on plaintiff's proofs, it does not follow that plaintiff's proofs were speculative and conjectural to such a degree that the court should have prevented the jury from determining between plaintiff's and defendant's proofs.

This Court in an early decision, which has been quoted extensively in this and other States, sets forth important principles that are particularly applicable to this appeal.   We refer to *Allison* v. *Chandler,* 11 Mich 542, wherein it is stated (pp 554–556, 560, 561):

"Since, from the nature of the case, the damages cannot be estimated with certainty, and there is a risk of giving by one course of trial less, and by the other more than a fair compensation—to say nothing of justice—does not sound policy require that the risk should be thrown upon the wrongdoer instead of the injured party?   However this question may be answered, we cannot resist the conclusion that it is better to run a slight risk of giving somewhat more than actual compensation, than to adopt a rule which, under the circumstances of the case, will, in all reasonable probability, preclude the injured party from the recovery of a large proportion of the damages he has actually sustained from the injury, though the

amount thus excluded cannot be estimated with accuracy by a fixed and certain rule. Certainty is doubtless very desirable in estimating damages in all cases: and where, from the nature and circumstances of the case, a rule can be discovered by which adequate compensation can be accurately measured, the rule should be applied in actions of tort, as well as in those upon contract. Such is quite generally the case in trespass and trover for the taking or conversion of personal property; if the property (as it generally is) be such as can be readily obtained in the market and has a market value. But shall the injured party in an action of tort, which may happen to furnish no element of certainty, be allowed to recover no damages (or merely nominal), because he cannot show the exact amount with certainty, though he is ready to show, to the satisfaction of the jury, that he has suffered large damages by the injury? Certainty, it is true, would thus be attained; but it would be the certainty of injustice. And, though a rule of certainty may be found which will measure *a portion* and *only a portion* of the damages, and exclude a very material portion, which it can be rendered morally certain the injured party has sustained, though its exact amount cannot be measured by a fixed rule; here to apply any such rule to the whole case, is to misapply it: and so far as it excludes all damages which cannot be measured by it, it perpetrates positive injustice under the pretense of administering justice.

"The law does not require impossibilities; and cannot therefore require a higher degree of certainty than the nature of the case admits. And we can see no good reason for requiring any higher degree of certainty in respect to the amount of damages, than in respect to any other branch of the cause. Juries are allowed to act upon probable and inferential, as well as direct and positive proof. And when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection

to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit. This should, of course, be done with such instructions and advice from the court as the circumstances of the case may require, and as may tend to prevent the allowance of such as may be merely possible, or too remote or fanciful in their character to be safely considered as the result of the injury.

"In the adoption of this course it will seldom happen that the court, hearing the evidence, will not thereby possess the means of forming a satisfactory judgment whether the damages are unreasonable, or exorbitant; and, if satisfied they are so, the court have always the power to set aside the verdict and grant a new trial.   *   *   *

"But generally, in an action purely of tort, where the amount of profits lost by the injury can be shown with reasonable certainty, we think they are not only admissible in evidence, but that they constitute, thus far, a safe measure of damages; as when they are but another name for the use of a mill (for example), as in *White* v. *Moseley,* 8 Pick (25 Mass) 356; or for the use of any other property where the value or profit of the use can be made to appear with reasonable certainty by the light of past experience, as might often be done where such profits had been for a considerable time uniform at the same season of the year, and there are no circumstances tending to show a probable diminution, had the injury not occurred. And possibly the same view, subject to the like qualifications, might have been taken of the profits of the plaintiff's business, had it been confined to the mechanical trade of repairing watches and making gold pens, particularly if done purely as a cash business. But this business seems to have been carried on with that of the sale of jewelry; he kept a jewelry store, and the profits of so much of his business as may be regarded as mercantile business, are dependent

upon many more contingencies, and therefore more uncertain, especially if sales are made upon credit. Past profits, therefore, could not safely be taken as the exact measure of future profits; but all the various contingencies by which such profits would probably be affected should be taken into consideration by the jury, and allowed such weight as they, in the exercise of good sense and sound discretion, should think them entitled to. Past profits in such cases, where the business has been continued for some length of time, would constitute a very material aid to the jury in arriving at a fair probable estimate of the future profits, had the business still continued without interruption.

"Accordingly such past profits have been allowed for this purpose, both in actions *ex contractu* and *ex delicto,* though more frequently in the latter, where from the nature of the case no element of greater certainty appeared, and the actual damages must be more or less a matter of opinion; and where, as in the present case, though somewhat inconclusive, it was the best evidence the nature of the case admitted. See *Wilkes* v. *Hungerford Market Company,* 2 Bing NC 281 (132 Eng Rep 110) ; *Ingram* v. *Lawson,* 6 Bing NC 212 (132 Eng Rep 1029) ; *Lacour* v. *Mayor,* 3 Duer (NY) 406; and the following in actions upon contract, *Driggs* v. *Dwight,* 17 Wend (NY) 71 (31 Am Dec 283) ; *Bagley* v. *Smith,* 10 NY 489 (61 Am Dec 756)."

The court properly decided that the evidence called for a jury verdict, and the verdict of the jury was not excessive.

The remaining question to be decided in this appeal is: Did the court commit prejudicial error in its charge to the jury and was it error for the court to refuse requests to charge offered by the defendant?

The court instructed the jury that the defendant was a common carrier and as such was required to furnish reasonably adequate service and facilities

for the use of its lines by the public, and then charged:

"The question then for you to determine is whether the defendant, General Telephone Company, its predecessor, the Michigan Associated Telephone Company, did furnish reasonably adequate service and facilities to the plaintiff from the 6th of June, 1950, to the 1st of June, 1951."

Defendant and appellant contends this instruction is erroneous because the question of adequacy of such service is one for the Michigan public service commission and not for the courts in the first instances, and cites cases from this Court wherein we held that the statute places the jurisdiction in the Michigan railroad commission (predecessor of the Michigan public service commission) with respect to unjust and unreasonable charges.*

Defendant's claim in this regard was disposed of by this Court's opinion in the first appeal by defendant in this case. In *Muskegon Agency, Inc., v. General Telephone Company of Michigan, supra,* 482, we said:

"It is axiomatic that an administrative agency, vested with quasi-judicial as well as quasi-legislative powers, can act upon complaints properly filed and accord a hearing to all parties.

"The jurisdiction of the public service commission under the statutory provisions is broad and comprehensive. Yet that jurisdiction has generally been prospective in operation. However, it is not a proper tribunal to decide a controversy after damage has been inflicted. This is a civil action to recover damages for breach of contract or for negligence. The commission has no jurisdiction to award plaintiff damages or to reimburse plaintiff for its losses.

---

* See CL 1948, § 484.101 *et seq.* (Stat Ann § 22.1441 *et seq.*).— REPORTER.

Only a court, in accordance with due process, can constitutionally award damages in a civil action."

Defendant-appellant also complains of the following instruction:

"Now, in this case, it is not necessary that the plaintiff be able to show the loss of any particular or definitely designated customer or customers, or any particular insurance coverage because of not being connected with telephone number 2–8281, the number assigned to it and listed for it in the directory. The law does not, in the assessment of damages, require mathematical precision in situations where, from the very nature of circumstances, precision is unobtainable. The fact that damages cannot be measured easily or with absolute accuracy is no grounds for denying them. The law does, however, require that the amount of profits lost be shown with such reasonable degree of certainty as the situation permits. On the other hand, such evidence of damage must not be so remote, speculative or contingent as to form no reliable basis for the determination as to amounts.

"In this case, the plaintiff has presented evidence of its income, particularly as to new business, during a period of years prior to June 1, 1950 and for a period of years after June 1, 1951, as well as for the period from June 1, 1950, to June 1, 1951. In a case of this kind, such evidence may be considered by you in determining the amount of the plaintiff's loss during the year from June 1, 1950, to June 1, 1951, when plaintiff's office telephones were not connected with the number 2–8281, the number assigned to it and listed in the directory, provided, however, that you are also satisfied, by a preponderance of the evidence, that such diminution of profits was due to no other cause than the failure of the telephone service, as alleged by the plaintiff. It is recognized that such testimony is, at best, unsatisfactory. However, plaintiff should not be denied recovery, if it

is entitled to recovery, because of its inability to show its losses with absolute exactness and certainty."

It is defendant's contention that under this instruction the court submitted to the jury the question of whether or not plaintiff was damaged by the lack of a correct listing of its telephone in the directory and that at this point 2 questions were presented to the jury: (1) Did the plaintiff suffer any damages which were the proximate result of the negligence of the defendant or breach of contract; and (2) What was the amount of damages? Defendant and appellant then contends that "the answer to the second question is negative if the answer to the first question is in the negative." And "further that under the proofs in this case the answer to the first question must be in the negative."

On the question as to whether plaintiff suffered damages which were the proximate result of the negligence of the defendant or of breach of contract, it is interesting to note that at the conclusion of plaintiff's testimony the defendant made a tender of $101.-66 "which," defendant stated, "has been testified here they spent in connection with this matter." It is difficult for this Court to conclude that by its action of making this tender, defendant did not admit that plaintiff suffered damages, that such damages were established, and that the issue still to be determined by the jury was the amount (of damages) that should be awarded.

In passing upon the above instruction, this Court, instead of condemning the trial court would commend the court on its instruction on a very difficult question. The court called to the jury's attention that because damages could not be measured easily or with absolute accuracy that was no ground for denying same; but that loss must be shown with such reasonable degree of certainty as the situation per-

mits and that the evidence to sustain damages must not be remote, speculative or contingent so as to form no reliable basis for a determination as to the amount. We find no error in this instruction.

Defendant and appellant claims that the court erred in submitting to the jury the question of loss of good will. The court's instruction in this regard was:

"You cannot award damages to the plaintiff for annoyance, inconvenience or humiliation, because the plaintiff has not included any such damages in its declaration. However, the plaintiff is seeking damages for loss of good will. You may consider whether or not the failure of [or?] inability to reach the plaintiff by dialing the number listed in the directory caused annoyance and inconvenience to the plaintiff's customers, and whether or not by this any adverse effect to the plaintiff's good will was occasioned, to its damage, and you have a right to consider as to whether or not such resulted in a loss of good will.

"The plaintiff has the burden of proving, by a preponderance of the evidence, that it, in fact, sustained a loss of good will. You cannot base that on conjecture, surmise, or guess, it must be based upon proof, by a preponderance of the evidence."

Defendant states there was an absence of proof to support the claimed loss of good will and, therefore, the submission of such a question to a jury could only result in pure speculation. The record sustained the statement of the trial court that "The loss of good will was evidenced only by a general statement of the plaintiff's officers that several people complained to them that they could not be reached or were having difficulty in reaching them by telephone."

While this Court would agree that the evidence in regard to claimed loss of good will was not extensive

or commanding, there is nothing to sustain defendant's statement that it "was futile for the court to instruct them (the jury) not to do this when that is the only thing they could do under the circumstances unless they ignored the question altogether. We do not assume that the jury ignored this question in view of the judge's charge that they might take it up and consider it."

The defendant did not seek by special questions to the jury to have them determine the question as to whether there was proof of loss of good will, and to what amount. There is nothing in the record to give this Court facts upon which to conclude how much, if any, of the $16,000 damages awarded by the jury was because of claimed loss of good will.

The court did not commit prejudicial and reversible error in instructing the jury in regard to good will.

The court, over the objection of defendant, admitted in evidence plaintiff's exhibits, prepared by the Michigan employment security commission, which consisted of a statistical record of employment and unemployment within the county of Muskegon from May of each year, 1947 to 1954, inclusive, indicating the following:

| "Employment | | Unemployment | |
|---|---|---|---|
| "May 1947 | 45,600 | May 1947 | 800 |
| May 1948 | 45,250 | May 1948 | 2,900 |
| May 1949 | 35,750 | May 1949 | 11,300 |
| May 1950 | 40,200 | May 1950 | 4,400 |
| May 1951 | 44,300 | May 1951 | 1,200 |
| May 1952 | 44,100 | May 1952 | 1,900 |
| May 1953 | 46,800 | May 1953 | 1,500 |
| May 1954 | 40,200 | May 1954 | 6,000." |

Instructing the jury, the court stated:

"Now, mitigation of damages must relate to the effects of the cause of such damages, and not to other

circumstances. Then you have a right to distinguish between such effects from the cause of such damages and such other circumstances. Plaintiff claims such increase, if any, resulted from increase in business conditions generally in the Greater Muskegon area, in increases in employment in the Greater Muskegon area, and from increases in coverage, or for new and different insurance risks to customers who, regardless of the issues involved in this case, did business with the plaintiff."

Defendant in contending that the court erred in giving this instruction submits "that the increase in the plaintiff's revenues during and after the year in question should be considered in mitigation of the claimed loss in new business and that the trial court was in error in the above-quoted instruction."

In the written opinion prepared in connection with the denial of the motion for a new trial, the court stated: · · ·

"The 3 officers of the plaintiff further testified, and their testimony was not disputed, that they and their staff had worked full time during that directory year from June 1, 1950, to June 1, 1951; that none of them had been disabled or ill; that none had been involved in any public scandal or received any newspaper publicity which would adversely affect the sales of plaintiff agency; that there had been no curtailment in the insurance coverage available for sale by the plaintiff and that there was no reason other than lack of sufficient telephone service that could account for their loss of volume of new business for that year."

In said opinion the court properly answered defendant's objections to the introduction of proof in regard to employment in Muskegon county, by saying:

"To adopt the defendant's contention as the law, could have the effect of not only preventing a plaintiff from proving damages if his income should in-

crease from purely extraneous causes other than the tort complained of; and on the other hand, subject a defendant tort-feasor to the payment of damages and loss of income which might have resulted from purely extraneous causes other than the tort complained of. To illustrate: suppose the plaintiff had employed several additional salesmen to sell insurance during the directory year in question, so that as a result plaintiff's income increased tremendously over previous or subsequent years. Such an increase would have nothing to do with the telephone service. Would it be just or equitable for the defendant to escape from the consequences of its tort just because plaintiff had employed additional help? This court thinks not.

"On the other hand, suppose the plaintiff had dispensed with the services of Mr. DenHollander during the directory year in question, so that its over-all business would have been materially reduced. Would it have been just or equitable to require the defendant to respond in damages for an over-all income loss which resulted from a cause having nothing to do with lack of telephone service? This court thinks not. Needless to say, the defendant would be the first to point out such a situation and properly so.

"Just as the court instructed the jury that they must find the plaintiff's damages resulted from no other cause than lack of telephone service, so it must also be just to permit a plaintiff to show that an increase in his over-all income resulted from causes having nothing to do with the tort complained of and in spite of such tort."

We do not believe the court erred in admitting the testimony or in instructing the jury in this regard.

After careful consideration, we find no reversible error in any of the court's instructions. We conclude this opinion with excerpts from the court's instructions, which, we believe, disclose the care exercised

by the court to protect defendant's contentions and rights.

"The defendant claims that the plaintiff has offered in evidence no figures to show the amount it claims to have lost in old renewal business or new business. Also, the defendant claims that the plaintiff has not been able to name any old customers, new customers or prospective customers whose business it lost because the number listed for the plaintiff in the telephone directory did not ring the telephone in its place of business, or because such customers did not know how to reach plaintiff on the telephone during the 12-months' period from June 1, 1950, to June 1, 1951.

"The defendant also claims that proof in this case shows plaintiff had a steady growth in its income for the years 1947 through 1954, inclusive; that its income for the 12-months' period from June 1, 1950, to June 1, 1951, was greater than for any of the 3 preceding directory years, and there is nothing, according to the claim of the defendant, in the comparison of the plaintiff's income from June 1, 1950, to June 1, 1951, with the 3 preceding years and the 3 succeeding directory years which show any loss of income from new business or otherwise.

"The defendant likewise claims that there is no proof in this case to support the plaintiff's claim for damages for loss of future income because of business which the plaintiff claims it lost from the period from June 1, 1950, to June 1, 1951, might have been renewed from year to year in the future, together with renewals of old business.

"You have a right, and you should take into consideration in determining whether or not, as a matter of fact, the plaintiff has suffered any loss proximately caused by the claimed negligence or breach of duty by the defendant, to take these into consideration. * * *

"In this case, the burden is upon the plaintiff, first, to prove loss of income, and second, that such loss of income was caused solely by the fact that the de-

fendant was guilty of negligence or a breach of duty. If plaintiff proves, by a preponderance of the evidence, that it sustained a loss during the year June 1, 1950, to June 1, 1951, it may not recover damages for other than that part of such loss which it proved was caused by the defendant's negligence or breach of duty.

"In this case, it is not sufficient for the plaintiff to prove that its income fell off during the period of June 1, 1950, to June 1, 1951, the plaintiff must also prove, by a preponderance of the evidence, that such loss of income was due to no other cause than the failure of its telephone service.

"Now, the measure of damages for the plaintiff in this case is the amount of income it can show it lost, if any, during the 12-months' period from June 1, 1950, to June 1, 1951, by reason of the claimed inability of people to reach it by telephone, by showing the amount of that income, as compared with the amount of its income during like periods for past years, together with any or all circumstances affecting such income.

"If you find a loss of income during the period in question, you must offset this loss by any increase in business the plaintiff had during this period, which resulted from the plaintiff's efforts to mitigate damages, as the plaintiff has a duty to mitigate its damages.

"Now, mitigation of damages must relate to the effects of the cause of such damages, and not to other circumstances. Then you have a right to distinguish between such effects from the cause of such damages and such other circumstances. Plaintiff claims such increase, if any, resulted from increase in business conditions generally in the Greater Muskegon area, in increases in employment in the Greater Muskegon area, and from increases in coverage, or for new and different insurance risks to customers who, regardless of the issues involved in this case, did business with the plaintiff.

"You cannot award damages to the plaintiff for annoyance, inconvenience or humiliation, because the plaintiff has not included any such damages in its declaration. However, the plaintiff is seeking damages for loss of good will. You may consider whether or not the failure of [or?] inability to reach the plaintiff by dialing the number listed in the directory caused annoyance and inconvenience to the plaintiff's customers, and whether or not by this any adverse effect to the plaintiff's good will was occasioned, to its damage, and you have a right to consider as to whether or not such resulted in a loss of good will.

"The plaintiff has the burden of proving, by a preponderance of the evidence, that it, in fact, sustained a loss of good will. You cannot base that on conjecture, surmise, or guess, it must be based upon proof, by a preponderance of the evidence.   *   *   *

"In this case, the plaintiff has presented evidence of its income, particularly as to new business, during a period of years prior to June 1, 1950, and for a period of years after June 1, 1951, as well as for the period from June 1, 1950, to June 1, 1951. In a case of this kind, such evidence may be considered by you in determining the amount of the plaintiff's loss during the year from June 1, 1950, to June 1, 1951, when plaintiff's office telephones were not connected with the number 2–8281, the number assigned to it and listed in the directory, provided, however, that you are also satisfied, by a preponderance of the evidence, that such diminution of profits was due to no other cause than the failure of the telephone service, as alleged by the plaintiff. It is recognized that such testimony is, at best, unsatisfactory. However, plaintiff should not be denied recovery, if it is entitled to recovery, because of its inability to show its losses with absolute exactness and certainty.
*   *   *

"You must carefully guard against the allowance of such damages as may be merely possible, or too

remote or fanciful in their character to square with reasonable probabilities of certainty.   *   *   *

"Now, if there were no negligence or breach of duty on the part of the defendant, then there is no cause of action. If there is no damages which can be ascertained with reasonable certainty, upon which you can make a probable estimate to a reasonable certainty, from the evidence in the case there, likewise, is no cause of action, in which event, you will find for the defendant, and upon returning to this courtroom your foreman will rise and say: 'We find for the defendant, no cause of action.' "

Judgment affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, CARR, and BLACK, JJ., concurred.