AMERICAN ANODCO, INC. and American Bumper & Manufacturing Company, Inc., Plaintiffs-Appellees, Cross-Appellants,

v.

REYNOLDS METALS COMPANY, Defendant-Appellant, Cross-Appellee.

Nos. 82–1945, 83–1013, 83–1101 and 83–1102.

United States Court of Appeals, Sixth Circuit.

Argued April 30, 1984.

Decided Sept. 12, 1984.

Rehearing and Rehearing En Banc Denied Oct. 29, 1984.

Cornelia G. Kennedy, Circuit Judge, filed a dissenting opinion.

Thomas F. Koernke (argued), Tolley, Fisher & Verwys, Todd Dickinson, Grand Rapids, Mich., for defendant-appellant, cross-appellee.

Thomas J. Heiden (argued), Miller, Canfield, Paddock & Stone, Grand Rapids, Mich., for plaintiffs-appellees, cross-appellants in all cases.

Charles L. Sweeris, Grand Rapids, Mich., for plaintiffs-appellees, cross-appellants in Nos. 83–1013, and 82–1945.

Before LIVELY, Chief Judge, KENNEDY, Circuit Judge, and PECK, Senior Circuit Judge.

LIVELY, Chief Judge.

In this diversity action the jury awarded damages to the plaintiff, American Anodco, Inc. (Anodco), against the defendant, Reyn-

olds Metals Company (Reynolds), for breach of contract. On appeal Reynolds argues that the district court admitted evidence in violation of the parole evidence rule, erroneously denied its motion for a directed verdict on the basis of a cancellation clause in a written purchase order, entered a judgment for excessive damages and computed prejudgment interest incorrectly.

## I.

Anodco is in the automotive anodizing business in Wyoming, Michigan. Anodizing is a process similar to chromeplating which is used extensively to inhibit corrosion of bumpers, grilles and other exposed surfaces on automobiles. Since 1976 Reynolds has contracted with Anodco to anodize bumpers which Reynolds has manufactured for various auto makers. Anodco was a small operation when it received its first contract from Reynolds and was required to expand its plant in order to accommodate the Reynolds business. The work under the 1976 contract consisted of anodizing the Pinto and Bobcat bumpers which Reynolds was furnishing Ford Motor Co. The parties treated that agreement as a requirements contract. After Reynolds built an anodizing facility in Grand Rapids, Michigan in 1977 it began anodizing some of the Bobcat bumpers rather than permitting Anodco to perform this work. When Anodco protested, Reynolds stopped anodizing and resumed sending all the bumpers to Anodco for treatment.

Also in 1977 Reynolds was awarded a large contract to supply bumpers for Buick and Oldsmobile X-cars. In early 1978 Reynolds and Anodco began discussions concerning a subcontract for anodizing X-car bumpers. These discussions involved George Monie, Reynolds' plant manager, and Jack Skoog, president of Anodco. The specifications for the Olds X-car bumpers required anodizing with a "potassium dichromate" seal. This method costs 30 to 40 percent more than anodizing with a "de-ionized water" seal, but provides greater protection against corrosion. The anodizing facility of Reynolds at Grand Rapids could apply a water seal but was unable to do dichromate sealing. Anodco, on the other hand, did have the capability to apply the dichromate seal.

The parties are in disagreement as to when and how the negotiations culminated. Skoog testified that Monie told him in early December 1978 that Anodco was being given "all of the X-car business"; Monie denied making that statement. In any event, on December 14, 1978 Reynolds issued to Anodco a "blanket purchase order" for anodizing 2300 Oldsmobile rear bumpers at $4.64 each. A change in the purchase order was issued on January 30, 1979 reflecting a price increase to $4.78 per bumper and increasing the quantity to 4000 pieces. A new blanket purchase order was issued on February 5, 1979. This document consisted of a printed form, several typewritten pages of conditions and some handwritten Oldsmobile specifications. The following matter was typed in the space on the front of the printed form headed "DESCRIPTION":

> Provide all necessary labor, material, equipment, supplies and supervision to inspect, repair and strip as necessary, anodize and pack aluminum bumpers as required by Reynolds Metals in accordance with applicable terms and conditions per attached. This Order is issued to cover Oldsmobile bumpers.

The document listed no quantity of bumpers to be anodized and was silent as to the duration of the order. Anodco performed under these purchase orders from January 1979 through January 1980. From the time it contracted with General Motors to supply the Oldsmobile bumpers Reynolds attempted to persuade GM to change the specifications so as to permit a water seal. Finally, in January 1980 the specifications were thus changed to reduce costs. Monie immediately called Skoog and advised him that Reynolds would do the Olds X-car anodizing itself since the specifications had been changed. Skoog protested that the parties were operating under a requirements contract for the current

"model run" of three years and that Anodco expected to continue doing the anodizing of Olds X-car rear bumpers. Reynolds stopped shipping Olds bumpers to Anodco and this action ensued.

## II.

### A.

Citing the parol evidence rule, Reynolds filed a pretrial motion to exclude all extraneous evidence with respect to the contract between the parties and to require Anodco to rely solely on the February 5th purchase order. The district court denied this motion, stating that it had determined there was sufficient ambiguity regarding the meaning of the contract to permit the admission of parol evidence. The court noted that there might be internal inconsistencies, that there was a reference to requirements which was not clear and that there was a question whether a "boilerplate" cancellation provision applied.

Both Anodco and Reynolds introduced oral testimony and exhibits in support of their respective constructions of the contract. Anodco produced evidence of the past relationships between the parties, conversations between Monie and Skoog prior to the issuance of the February 5th purchase order and the custom and practice of auto manufacturers of contracting with suppliers of component parts to furnish the requirements of a "model run." Monie denied that Anodco had ever been told it would anodize all the Olds X-car rear bumpers for three years. Reynolds took the position that the February 5th order with attachments was an integrated contract and that evidence of past relationships between the parties and of discussions and negotiations prior to agreement was inadmissible.

Reynolds also relied affirmatively on two printed provisions which appeared on the reverse side of the February 5th purchase order. One provision declared that the "exact terms, conditions and stipulations hereof or attached by Buyer hereto, which represent the entire contract between the parties ... may not be amended, modified or rescinded except by written agreement." Another provision stated that Reynolds could at its option cancel any unshipped merchandise or incompleted portion of the order at any time. Skoog acknowledged the presence of these provisions, but testified that he assumed they did not apply to this agreement which Anodco treated as a requirements contract. He testified that Anodco did not agree to either provision, and that Reynolds had not made either one a condition of the contract during negotiations.

Reynolds argued alternatively that even if the February 5th document created a requirements contract it applied only to anodizing with a dichromate seal. When Oldsmobile changed the specifications to permit a water seal Reynolds no longer had any requirements covered by the contract. In support of this argument Reynolds relied on the fact that dichromate specifications were attached to and incorporated in the purchase order while there were no specifications for a de-ionized water seal.

### B.

The district court's instructions defined a requirements contract and charged the jury that it must determine from the evidence whether these parties intended to enter into such a contract. The court instructed the jury that if it found that the parties did not intend to make a requirements contract it should find in favor of Reynolds. Further, even if the jury found that a requirements contract was intended, if it also determined that the contract was to cover anodizing only so long as potassium dichromate seal was required its verdict should be for Reynolds. The jury was to find in favor of Anodco only if it found that the contract was intended to cover anodizing all X-car bumpers that Reynolds sold to Oldsmobile and that Anodco was to continue anodizing these bumpers so long as Reynolds supplied them to Oldsmobile.

The district court also instructed the jury that if it found for Anodco it could award damages only for foreseeable losses which

were a direct and natural result of Reynolds' breach of contract. Foreseeability was defined and the jury was instructed that it must determine the amount of damages required to reasonably and fairly compensate Anodco and that the award could be only for actual damages and could not be based on speculation.

Reynolds made three objections to the jury instructions. None of the objections related to the instructions given by the court, but all concerned the court's failure to give instructions tendered by Reynolds. Two of the tendered instructions related to the parol evidence rule and the other to damages.

### C.

The jury returned a verdict in favor of Anodco for $1,594,855. Reynolds filed a motion in the alternative for judgment notwithstanding the verdict or for new trial or for remittitur. It contended that the unambigious cancellation clause entitled it to a directed verdict, that the contract covered only dichromate anodizing, and that the verdict was against the great weight of the evidence insofar as it found that the contract covered all anodizing and was a requirements contract. The district court found that Reynolds had withdrawn its defense based on the cancellation clause and had thereby waived reliance on the clause. The district court concluded that the other issues were properly submitted to the jury and that the verdict was within the range of the proof.

After entry of judgment Reynolds disputed the district court's construction of the Michigan prejudgment interest statute. Also, just prior to the entry of judgment Anodco filed a motion to find Reynolds in contempt of court and for sanctions because of the alleged failure of Reynolds to produce documents covered by a pretrial subpoena duces tecum. The documents were ultimately produced immediately before and during trial. The district court issued a post-judgment opinion and order directing that interest on the entire damage award be compounded annually from the date of filing the complaint and denying the request for sanctions. *American Anodco, Inc. v. Reynolds Metals Company*, 572 F.Supp. 895 (W.D.Mich.1983). Reynolds appealed from the judgment, the order denying judgment notwithstanding verdict, new trial or remittitur and the order allowing compound interest from the commencement of the action. Anodco appealed from the denial of sanctions.

### III.

#### A.

■ The district court correctly denied the motion for judgment notwithstanding the verdict. This motion was based entirely on the cancellation clause and it is clear from the record that Reynolds abandoned its defense based on the cancellation clause. After the district court had granted Reynolds' motion for directed verdict on two claims not involved in this appeal, the judge addressed counsel for Reynolds:

> *The Court:* It is my understanding for the record that the Defendant is not relying upon the cancellation clause in the blanket purchase order as justification for the termination of the relationship with the Plaintiff.
>
> *Mr. Kay* (Counsel for Reynolds): That's correct, Your Honor.

The judge then advised counsel for Anodco, "because the defendant is abandoning that defense," Anodco should make no reference to the cancellation clause. Counsel for Reynolds did not object to the use of "abandoning," but told the court he wanted it made clear to the jury that the other issues were still open: "The fact that the cancellation clause isn't in there doesn't impair those issues."

On appeal Reynolds argues that it only intended to withdraw the issue of the effect of the cancellation clause from the jury's consideration, but intended to continue to rely upon it as the basis of its motion for a directed verdict. If this was the intent of counsel, it is not evident from the record and was not the understanding of the trial judge, who noted in denying the

motion for judgment notwithstanding the verdict that Reynolds had withdrawn this defense at trial. Reynolds cannot resurrect on appeal an issue which it abandoned at trial. If he had intended to continue to rely on the cancellation clause it was the duty of counsel to make his position clear to the trial court and to make a record for this court.

### B.

■ Reynolds argues that the district court erred in its finding that the February 5th purchase order was ambiguous and in its decision to permit parol evidence as to the agreement of the parties. We think the district court was clearly correct in its treatment of this issue. Despite the printed statement on the reverse of the order form, it appeared that the February 5th document did not contain all the terms of the contract. It was silent as to quantity of work to be performed and as to the duration of the agreement. Furthermore, the handwritten notes appended to the printed and typed portions were cryptic at best and required some explanation.

■ There is no dispute that the law of Michigan controls this case. Though the parol evidence rule relates to trial procedure, it is substantive in nature. In common with most jurisdictions Michigan recognizes the parol evidence rule to the extent of not permitting extrinsic evidence to contradict or vary the terms of a written contract. However, before the parole evidence rule may be invoked there must be a finding that the parties intended the written instrument to be a complete expression of their agreement, and "[e]xtrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question of whether the written instrument is such an 'integrated' agreement." *NAG Enterprises, Inc. v. All State Industries, Inc.*, 407 Mich. 407, 410, 285 N.W.2d 770 (1979). Michigan does not apply the parol evidence rule to written documents which do not integrate the agreement of the parties or which only partially integrate the agreement. *Good-*

*win v. Coe Pontiac, Inc.*, 392 Mich. 195, 204, 220 N.W.2d 664 (1974). Even when no ambiguity appears on the face of a written agreement Michigan courts may receive extrinsic evidence to disclose ambiguity or to show that there is none, as well as to resolve any ambiguity proven to exist. The actual intent of the parties is what the court is seeking in contract actions and extrinsic evidence is admissible to indicate this intent. *Id.* at 206, 220 N.W.2d 664.

The Supreme Court of Michigan after discussing earlier cases summarized its treatment of the parol evidence rule as follows in *Goodwin v. Coe Pontiac:*

From these cases we derive the following rules to decide this case:

1) Where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of ambiguity.

2) Where ambiguity may exist in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties.

3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract.

392 Mich. at 209–10, 220 N.W.2d 664. This court has recognized Michigan's treatment of extrinsic evidence in many diversity cases. Recently we noted that a district court properly considered evidence of prior negotiations and intent of the parties to find that a document which was not ambiguous on its face did not in fact contain the full agreement of contacting parties. See *Sawyer v. Arum*, 690 F.2d 590 (6th Cir. 1982).

Reynolds relies primarily on *Ensign Painting Co. v. Alfred A. Smith, Inc.*, 21 Mich.App. 494, 175 N.W.2d 789 (1970), *rev'd on other grounds*, 385 Mich. 268, 188 N.W.2d 534 (1971). In *Ensign Painting* the Michigan Court of Appeals affirmed the trial court's refusal to admit parol evidence in a contract case. The contract in question was for painting a building then under construction. A written purchase order from the general contractor under

which the painting company began work required the painting to be done in accordance with plans and specifications attached. These plans clearly included painting 1,820 lineal feet of dry wall stud partitions. The court refused to admit testimony of an oral agreement at the time the painting company submitted its bid that the bid covered only exterior painting and excluded any work on partitions.

*Ensign Painting* does not help Reynolds. There the parol evidence was offered to contradict and vary a term of the written agreement in the view of the trial court and the court of appeals. It was not offered to disclose an ambiguity, or to show that the entire agreement was not included in the writing. The Michigan Supreme Court reversed the court of appeals for misapplying the parol evidence rule. The supreme court found, in agreement with the dissenting appeals court judge, that the evidence was not offered to vary the terms of the written agreement, but to show that the "purchase order, neither signed nor accepted in writing by the plaintiff, never became a contract." 385 Mich. at 271, 188 N.W.2d 534. Parol evidence was held admissible for this purpose. This case illustrates the Michigan Supreme Court's refusal to exclude any evidence on the basis of the parol evidence rule which will show the intent of the parties.

We believe Judge Gibson properly admitted extrinsic evidence in the present case to indicate the actual intent of the parties. The evidence of prior and contemporaneous negotiations and discussions together with the evidence of past relationships between Reynolds and Anodco raised issues concerning the nature of the contract which the parties intended to make. Under Michigan law the jury was permitted to consider this evidence. The jury found from all the evidence that the parties intended to make a requirements contract that covered all Oldsmobile X-car rear bumpers, regardless of whether a water seal or a dichromate seal was applied. There was no objection to the instructions as given and the district court did not err in declining to give the instructions on parol evidence tendered by Reynolds. The tendered instructions did not properly state the law of Michigan.

## IV.

### A.

Reynolds asserts that the district court permitted Anodco to recover items of damages which are not authorized. We note that Reynolds objected to very little of the evidence on damages offered by Anodco and it introduced no evidence on the subject itself. It did object to the district court's refusal to give a tendered instruction that the jury's award of damages could not include a loss in the value of Anodco's business which would be reflected only by diminution in the value of shares of stock. This objection to instructions reflects an earlier objection to testimony of Anodco's accountant who testified on loss of business value and introduced Exhibit HH. Reynolds objected specifically to Exhibit HH, which purported to show that the value of Anodco as a going business declined by $1.1 million as the result of Reynolds' breach. This figure was reached by capitalizing average earnings for the three-year period prior to the breach and then for a five-year period including the three years prior to the breach and the two years following. Reynolds argues that an award for loss of business value would constitute a double recovery since loss of earnings from the cancellation was fully reflected in Exhibit DD and is the very element in Exhibit HH which produced the lower figure business value for the two years following the breach.

We agree with Reynolds on this issue. It is clear that loss of future profits is permitted as an element of damages in breach of contract actions when they can be established with reasonable certainty. *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 242 N.W.2d 372 (1976). As the court stated in *Muskegon Agency, Inc. v. General Telephone Company of Michigan,* 350 Mich. 41, 50, 85 N.W.2d 170 (1957), "The law does not require impossibilities; and cannot

therefore require a higher degree of certainty than the nature of the case admits." (quoting *Allison v. Chandler*, 11 Mich. 542 (1863), which upheld loss of future profits as an element of damages). However, like any item of damages, loss of profits may only be recovered once. Exhibit DD set the loss of future profits from the breach at $739,269. The removal of these same profits in 1980 and 1981 caused the reduction in the value of the business when capitalized by the accountant. Where the loss of profits and loss of value are intertwined, as they are here, and the loss of value is based on loss of future profits, to allow both would be to permit a double recovery. See *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 754–55 (10 Cir. 1975).

## B.

Reynolds also objected to Exhibits JJ and KK which purport to show additional interest which Anodco was forced to pay on borrowed money because of the loss of revenue it experienced from Reynolds' breach. The testimony of Skoog was that Anodco was forced to reduce its operations drastically and that it closed its plant for extended periods because of lack of work. Skoog also testified that Anodco had turned away customers in reliance on the Reynolds contract and that there was no ready source of new revenue. Reynolds argues that additional interest was not a foreseeable result of a breach of the contract and that Michigan's prejudgment interest statute compensates a plaintiff for a loss such as this. This second argument is specious. It is obvious that interest incurred by a plaintiff because additional borrowings are required to make up for lost revenue is not the same as prejudgment interest. See *United Telecommunications v. American Television & Communications Corp.*, 536 F.2d 1310, 1314 (10th Cir. 1976).

▇ The district court correctly instructed the jury that Anodco could recover damages only "for those items which the parties could reasonably foresee as poten-

tial losses in the event of the breach at the time the contract was made." This limitation on damages for breach of contract has been accepted by English and American courts at least since *Hadley v. Baxendale*, 9 Exch. 341 (1854). We believe the additional interest items claimed by Anodco pass the foreseeability test. There was extensive testimony concerning the extent to which Anodco had become dependent on the Reynolds business. Reynolds was aware that Anodco had enlarged its anodizing plant in order to accommodate a Reynolds order. The district court did not err in permitting the jury to consider the evidence of additional interest incurred.

## C.

▇ We have not considered claims of error related to damages which have been raised for the first time in this court. Rule 103, Fed.R.Evid., forecloses reliance on the admission of evidence as the basis of appeal where timely objections with specific grounds are not made at the trial, unless the substantial right of a party is affected. Here Reynolds had ample opportunity to object to all the evidence on damages and elected to object to three items only. In fact counsel for Reynolds specifically declined the opportunity to object to Exhibits DD, EE, FF, GG and II (Transcript, p. 720). As we have noted Reynolds introduced no evidence on damages. It chose to rely on cross-examination. Under these circumstances it cannot argue to this court that the jury's award is excessive and contrary to law when the award is based on evidence to which it made no objection. *Jay Edwards, Inc. v. New England Toyota Distributor*, 708 F.2d 814, 819–22 (1st Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983); see also *Kingsport Motors, Inc. v. Chrysler Motors Corp.*, 644 F.2d 566, 569 (6th Cir.1981).

▇ This court will not overturn a jury verdict on the basis of the amount of the award if the verdict is within the range of proof and the jury was properly instructed. Except for the impermissible evidence of loss of business value, all of the proof

was either admissible or admitted without objection. The jury returned a general verdict and it is impossible to know exactly what items of proof it considered in reaching its verdict. However, if Exhibit HH is eliminated, the evidence of damages is limited to the following:

| | |
|---|---|
| Exhibit DD .......... | $ 739,269 |
| Exhibit FF .......... | 177,713 |
| Exhibit GG .......... | 72,800 |
| Exhibit JJ ........... | 163,555 |
| Exhibit KK .......... | 41,744 |
| | $1,195,081 |

The award of $1,594,855 exceeded the properly proven damages by $399,774. In its post-trial motion Reynolds sought remittitur as an alternative remedy. When evidence of damages has been admitted erroneously and the effect of the error can be reasonably approximated to a definite portion of the amount of the verdict, this court may condition its affirmance on the plaintiff remitting that portion of the verdict. See 6A J. Moore, Moore's Federal Practice ¶ 59.08[7] at 59–208–212 (1983); *cf. Chesbrough v. Woodworth*, 195 F. 875, 887 (6th Cir.1912) (approved practice of affirming judgments with remittitur which would otherwise have been reversed). We conclude that Reynolds is entitled to remittitur in the amount of $399,774, an amount justified only by a partial acceptance of the testimony on loss of business value.

### V.

Two other issues require less extended treatment.

### A.

Reynolds objected to the district court's allowance of compounded interest on the judgment from the date the complaint was filed. Prior to 1980 a Michigan statute permitted a court to award prejudgment interest at the rate of 6%, not compounded. A new statute, adopted in 1980, raised the interest rate to 12% compounded annually. The district court permitted the award in this case to be compounded annually from the date the complaint was filed rather than from the effective date of the 1980 amendment. Reynolds objected that there

should be no compounding for the period prior to the 1980 amendment, that the "anniversary date" of compounding should be the effective date of the amendment rather than the date the complaint was filed and that the damage award should be "apportioned" over the 26 months between the filing of the complaint and the entry of judgment, for the purpose of computing interest.

The district judge rejected all of these arguments. He found that the Michigan statute calls for interest on the judgment from the date of filing the complaint and that apportionment would not be proper. In pertinent part the statute provides:

(1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section.

(2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980 at the rate of 6% per year and on and after June 1, 1980 to the date of satisfaction of the judgment at the rate of 12% per year compounded annually.

Mich.Comp.Laws Ann. § 600.6013 (West Supp.1984–85). The district judge found that the purpose of this statute would be best effectuated by permitting interest to be compounded from the date the complaint is filed. We cannot say this construction of the statute is erroneous or that the district court abused its discretion in the interest award in this case. In diversity cases, federal courts follow state law on the question of prejudgment interest. *Glens Falls Insurance Co. v. Danville Motors, Inc.*, 333 F.2d 187, 191 (6th Cir.1964).

### B.

Anodco has filed a cross-appeal from the denial of its motion for sanctions. The district court lived with this case through months of pretrial activity and two weeks of trial. Judge Gibson was in much

better position than we to determine the effect of Reynolds' failure to produce documents when first requested and whether such failure was willful. We will not overturn a ruling by the trial judge on a motion such as this in the absence of a clear abuse of discretion. We find no such abuse here.

The judgment of the district court is affirmed on appeal and cross-appeal. However, if Anodco does not agree to remittitur of $399,774, the judgment will be vacated by the district court and a new trial granted on the issue of damages alone.

No costs are allowed on appeal. Each party will bear its own costs.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

Because I believe that the cancellation clause gave Reynolds the right to terminate the contract and that Reynolds did not waive reliance on it, I respectfully dissent.

The District Court refused to apply the cancellation clause of the purchase order apparently on the grounds that it was "a so-called boilerplate provision" whose application was questionable. The clause states that "Buyer may at its option cancel any unshipped merchandise or incompleted portion of this order at any time whether or not Seller is in default," and that the buyer will pay the seller's costs. Anodco argued in the District Court, not that this language is ambiguous, but that it should not be applied because the parties did not agree to it. Skoog, Anodco's president, stated, however, that he read the cancellation clause in the purchase order, and did not object to it. "By failing to object the plaintiff might be deemed to have agreed that the purchase order superseded any earlier oral contract." *Ensign Painting Co. v. Alfred A. Smith, Inc.*, 385 Mich. 268, 272–273, 188 N.W.2d 534 (1971). Anodco also argues that he believed that the cancellation clause applied only to items purchased by quantity, but the language of the provision—"incompleted portion of this order"—does not support that interpretation. Last, Anodco

suggests that Reynolds failed to pay Anodco's costs, although the costs for anodizing the bumpers delivered were all covered, because Anodco did not receive all the profits it could possibly have made under the contract. This interpretation of "costs" seems unreasonable and unjustified.

Anodco offered two procedural objections to considering the cancellation clause as authority for terminating the contract. First, Reynolds did not invoke the clause when cancelling; it stated instead that it no longer had requirements under the contract. Although I find no Michigan case directly on point I believe the Michigan Supreme Court would follow the decision of the United States Supreme Court in *College Point Boat Corp. v. United States*, 267 U.S. 12, 16, 45 S.Ct. 199, 201, 69 L.Ed. 490 (1924) (Brandeis, J.), where it said:

> An unconditional right to cancel can be availed of for the purpose of terminating a contract, even after suit [is] brought, unless some intervening change in the position of the other party renders that course inequitable.... [T]he right to cancel was not lost by mere delay in exercising it.

Anodco also claims that Reynolds waived its defense under the cancellation clause and the panel agrees. However, I believe a fair reading of the record discloses that the waiver was limited to not submitting the issue to the jury. At trial, Reynolds twice moved unsuccessfully for a directed verdict on the grounds of the cancellation clause. One of those motions was made at the close of the evidence. Later that same day counsel met with the judge in chambers to discuss jury instructions.[1] The following day the court granted a part of Reynolds' motion for directed verdict, dismissing Anodco's antitrust claim. The following colloquy then took place after the court had advised counsel of the time it would allow for final argument to the jury:

> THE COURT: It is my understanding for the record that the Defendant is not

1. Unfortunately, that conference is not included in the record; whether because it was not recorded or not ordered transcribed, we do not know.

relying upon the cancellation clause in the blanket purchase order as justification for the termination of the relationship with the Plaintiff.

MR. KAY: That's correct, Your Honor.

THE COURT: And I understand, Mr. Kay, that you will not argue this matter and no reference would be made to the cancellation clause. And it is my further understanding, Mr. Heiden, that because the Defendant is abandoning that defense that you would make no reference to that cancellation clause.

MR. HEIDEN: That's correct, Judge. And my understanding from being in chambers is that you were going to—have some words with your clerk, all that was agreeable to communicate that fact to the jury.

THE COURT: Very well. In addition I will advise the jury that counts two and three are no longer part of the case. As a consequence, the claim by American Bumper is no longer part of this case. By the same token the Defendant will make no reference to, no additional references to those facts. Is that correct, Mr. Kay?

MR. KAY: That's correct, Your Honor. I just would urge the Court to make it clear to the jury in terms of the cancellation clause that the overall issue of whether or not it is a requirements contract and whether it covers anything more than dichromate final seal are entirely open issues. The fact that the cancellation clause isn't in there doesn't impair those issues.

I don't know exactly how to express it. I feel the Court will do a little better job than I.

THE COURT: The Court has finalized the instructions that the Court intends to give. The exceptions to those instructions can be made after the Court gives the instructions. With permission of counsel, I would prefer to send the jury out and have them begin deliberations and at that time you may make any objections to the instructions for the record.

Following the verdict in favor of Anodco, Reynolds argued in its motion for judgment notwithstanding the verdict (which was combined with its motion for new trial) that it was entitled to a directed verdict on the basis of the cancellation clause. The District Judge denied the motion saying, "Reynolds waived this argument by withdrawing this defense at trial and taking the affirmative step of requesting this Court *not* to instruct the jury on this issue." Since Reynolds is raising solely a legal issue with respect to the cancellation clause the second portion of the District Judge's reason for denying a directed verdict is inapplicable.

Reynolds' motion for judgment N.O.V. was filed May 21, 10 days after the judgment was entered and 22 days after the verdict. Thus its position that it did not abandon its right to a directed verdict on the basis of the cancellation clause is not raised for the first time on appeal. Counsel did make known to the trial judge that Reynolds continued to rely on that defense.

The focus of the Court's and of counsel's attention when the abandonment is supposed to have occurred was on the jury instructions and the jury arguments. It was reasonable for Reynolds' counsel to assume that the judge's statement in which he concurred related to the case as presented to the jury, and that he was not relying on the cancellation clause in his submission to the jury. To hold that counsel by this colloquy abandoned the issue altogether is unfair. Anodco was not prejudiced in any way by any misunderstanding as to what was meant. The meaning of the cancellation clause was unambiguous and should have been ruled upon as a matter of law by the court.

Accordingly, I dissent.