BISHOP ELECTRIC, INC., v. SIMPSON.

1. TRIAL—EXHIBITS—EVIDENCE—PRETRIAL SUMMARY.
    Claim by defendant that reversible error was committed by the trial court in the admission into evidence of an exhibit itemizing plaintiff's various claims against defendant when plaintiff had not supplied defendant with a copy of said exhibit prior to trial, as required by the pretrial summary *held*, without merit, where said exhibit was produced at trial by defendant's agent who testified that it had been in his possession for a long period of time, that he had forwarded a copy to defendant prior to trial, and defendant had failed to bring a motion to require production of the exhibit pursuant to court rule, after his attention had been brought thereto by plaintiff's request for admissions (GCR 1963, 301.3).

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 53 Am Jur, Trial §§ 8, 11.
[7] 41 Am Jur, Pleading § 296.
[8, 9] 41 Am Jur, Pleading § 304 *et seq.*
[10–12] 17 Am Jur 2d, Contracts § 465 *et seq.*

2. Same—Exhibits—Evidence—Pretrial Summary.

Claim by defendant that reversible error was committed by the trial court in admitting into evidence two exhibits consisting of worksheets and invoices containing a breakdown of costs, when said exhibits had not been forwarded to defendant for examination as required by the pretrial summary *held*, without merit, where (1) defendant had limited the required production of exhibits by demanding that plaintiff produce only those exhibits it intended to introduce into evidence at trial, (2) defendant made no motion for discovery of exhibits pursuant to court rule, (3) plaintiff had not intended to introduce the exhibits in question at trial and (4) exhibits were, in fact, introduced into evidence by defendant's agent, an adverse witness (GCR 1963, 301.3).

3. Same—Exhibits—Evidence—Pretrial Summary.

A party may not claim that reversible error justifying the grant of a new trial, occurred in the admission into evidence of an exhibit not produced for his inspection, pursuant to the requirements of the pretrial summary, where the adverse party moved for a mistrial to avoid any possible prejudice because of the failure to produce said exhibit, and the party claiming error opposed said motion, stating that it has had ample opportunity to examine said exhibit, since, under the circumstances, there can be no claim of prejudice or surprise (GCR 1963, 301.3).

4. Same—Exhibits—Evidence—Pretrial Summary.

Claim by defendant that reversible error was committed in the admission into evidence of an exhibit offered by plaintiff, which exhibit was not produced for defendant's examination before trial as required by the pretrial summary, *held*, without merit, where after a 12-day recess in the trial, plaintiff moved for a mistrial to cure any possible prejudice caused by failure to produce said exhibit, and defendant opposed said motion, stating that he had had ample opportunity to study the exhibit, since, under the circumstances, there can be no claim of prejudice or surprise (GCR 1963, 301.3).

5. Same—Exhibits—Evidence—Pretrial Summary.

A party may not claim that he was prejudiced by failure of an adverse party to produce exhibits for examination before trial, pursuant to the pretrial summary, where the exhibits in question were admitted into evidence on his own motion during cross-examination.

6. PLEADING—AMENDMENT—PRETRIAL CONFERENCE.

The purpose of modern pleading is to give the parties adequate notice of the issues they are to meet, and the pretrial conference is intended to narrow and simplify such issues, to consider the necessity of amendments to the pleadings, and, generally speaking, to assure that the issues raised may be expeditiously tried so that the rapid and efficient administration of justice may be achieved by elimination of traps and surprises.

7. SAME—AMENDMENT—THEORY OF CASE—DISCRETION OF COURT.

Amendment to pleadings during trial, to clarify or state more fully the claims of a particular party, may be allowed in the discretion of the court.

8. SAME—AMENDMENT—TRIAL—NEW CAUSE OF ACTION.

The test in determining whether an amendment to a pleading states a new cause of action is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.

9. SAME—AMENDMENT—THEORY OF CASE—DISCRETION OF COURT.

Claim by defendant that the trial court abused its discretion and committed reversible error by allowing plaintiff, after two days of trial, to amend its complaint *held*, without merit, where, although plaintiff's initial complaint sought recovery of sums for extras in addition to that paid plaintiff for completion of an oral building contract, the pretrial summary, the opening statement of plaintiff's counsel, and the proofs all clearly indicated that plaintiff sought sums for labor and materials supplied in excess of that originally agreed upon because of changes which defendant authorized from the original contract, which contract was never completed, since the amendment merely clarified plaintiff's cause of action against defendant, and was not such as to state a new cause of action.

10. CONTRACTS—MODIFICATION—CONSENT.

The parties to an agreement, either written or oral, may always change the agreement by mutual consent.

11. SAME—MODIFICATION OF WRITTEN AGREEMENT—BURDEN OF PROOF.

A party claiming modification of a written agreement by a subsequent oral agreement has the burden of proving such modification or change.

12. SAME—MODIFICATION OF WRITTEN AGREEMENT—EVIDENCE.

Defendant's claim that plaintiff was precluded from recovering the value of labor and materials not included in his oral contract with the general contractor, but supplied by plaintiff in the construction of defendant's building, because plaintiff had been instructed by letter from defendant's architect to perform no work not included in his contract with the general contractor without first giving defendant owner a price *held,* without merit, where there was sufficient evidence to support the finding of the jury that such agreement was subsequently modified by oral agreement between the parties.

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted Division 3 November 9, 1966, at Grand Rapids. (Docket No. 1,386.) Decided July 20, 1967. Rehearing denied September 3, 1967. Leave to appeal denied December 4, 1967. See 379 Mich 789.

Complaint by Bishop Electric, Inc., a Michigan corporation, against B. W. Simpson, owner of a building upon which plaintiff performed certain work, to recover for labor and material supplied by plaintiff over and above that required by plaintiff's agreement with the general contractor. Judgment for plaintiff. Motion for new trial denied. Defendant appeals. Affirmed.

*Robert L. Borsos,* for plaintiff.

*L. J. Crum,* for defendant.

NEWBLATT, J. B. W. Simpson, defendant, contracted with certain architects for the construction of a building and for the installation of automatic car wash equipment. The architects drew up plans and specifications and a general contract was entered into between B. W. Simpson and John Hamilton. Thereafter, John Hamilton, the general contractor sublet the contract for the installation of the electrical portion of the construction to the plaintiff, Bishop Electric, Inc., for $6,950.

Construction commenced in September 1963 and plaintiff started working on the job in the early part of October 1963. The job was completed and the car wash opened for business on or about January 20, 1964.

Suit was commenced by plaintiff premised on the theory that defendant owed plaintiff for extra labor and material over and above the subcontract with John Hamilton.

Plaintiff claimed that certain electrical work in addition to its contract had been ordered and defendant had instructed him to do the work without breaking down the additional costs because of the delays that would result due to the difficulties in making such a breakdown.

Plaintiff had an oral contract with the general contractor for the sum of $6,950 which it admitted receiving. After the changes and additions were made, the total charges of the plaintiff were computed and the amount received from the general contractor was deducted from the total amount due plaintiff.

The jury's verdict was for plaintiff in the amount of $4,459.13, from which defendant appeals.

Defendant's first claim of error lies with the admission into evidence of exhibits which were not produced prior to trial pursuant to the pretrial summary entered under GCR 1963, 301.3.

It appears from the record that the purpose of the provision of the summary in relation to the exhibits was to save time for the admission of such exhibits at the trial.

The summary stated in part:

"No exhibits were offered on pretrial. However, before the trial is commenced the attorneys will go over each other's exhibits for the purpose of saving time for the admission of such exhibits at the trial."

Plaintiff advertently or inadvertently failed to furnish defendant's counsel, in advance of trial, certain items which were later used at trial. These items included time cards, exhibit 4, which was an itemized statement of 23 separate items for additionals on the job totaling $4,514.18, work sheets, invoices and breakdown of costs (exhibits L and N).

Plaintiff asserted that it had not intended to present the work sheets and breakdown of costs as trial exhibits. If defendant wished to examine plaintiff's records prior to trial he could have moved for discovery and production of documents and things for inspection, copying or photographing pursuant to GCR 1963, 310 as did plaintiff's attorney. Instead, he merely requested access to evidence which plaintiff intended to introduce at trial. By his own request he limited the scope available under the applicable rule. Defendant's notice to produce evidence reads as follows:

"Pursuant to a pretrial statement and court rules, request is hereby made of the plaintiff to produce all of the books, records, invoices, time sheets, exhibits and any and all evidence which the plaintiff *intends to offer* in evidence at the trial of the within entitled cause." (Emphasis supplied.)

Defendant cannot now claim plaintiff denied him access to his records since he had never requested them. Defendant's counsel, according to the record, first learned of exhibit 4 on the first day of trial from the very first witness called who was the defendant's agent, the architect, called by the plaintiff as an adverse witness. It was this witness who produced exhibit 4 from his own file and indicated that after originally receiving it before suit was commenced, he sent a copy to the defendant. Under such circumstances, defendant at least was charged with knowledge of the existence of such exhibit and

had his attention called to it by plaintiff's request for admissions. The fact that plaintiff's personal list of these items had pencil notations as to who authorized each item could have been ascertained if proper discovery procedures had been utilized.

The foregoing establishes a sufficient basis for denying a new trial on the grounds of the admission of exhibit 4; but two even more important grounds remain. Plaintiff was using this list to testify from prior to the 12-day recess in the trial of this cause and did so in full view of the defendant. While the defendant was going over the time cards during the trial recess, he could have easily requested access to the list. And finally, upon reconvening after the recess and after the defendant had express knowledge of exhibit 4 for 13 days, plaintiff moved for a mistrial if the defendant felt he had been prejudiced or caught by surprise. Defendant stated that he did not want a mistrial and indicated he was ready to proceed. In this posture, defendant should not be allowed to assert the admission of exhibit 4 as error. In so ruling, it must be noted that counsel's reliance upon the pretrial summary to produce all records involved in this case is unfortunate and, while this Court does not wish to interpret the General Court Rules so strictly as to defeat their obvious intent, subsequent events indicate that the defendant had sufficient opportunity to cure any prejudice which may have resulted from the nonproduction of all of the time cards and exhibit 4.

The exhibits L and N were only admitted upon defendant's motion during cross-examination. This along with the fact that these exhibits would not have been introduced or used at trial if plaintiff's bookkeeper had been permitted to testify is a clear indication that they were not intended to be used as exhibits and, therefore the order in the pretrial summary was not violated.

Defendant's first claim of error is without merit.

Defendant's second issue relates to the permitted amendment to plaintiff's complaint. This claim, too, is without merit.

After two days of trial before a jury, the trial court allowed plaintiff to amend its pleadings, alleging that the plaintiff was suing upon a single contract between defendant and plaintiff to complete the electrical installation on a time and material basis and *not* on the theory of compensation for extras.

Plaintiff did not change the theory of his cause of action. From the beginning the claim was and is one for the recovery of amounts expended for changes and additional electrical installations not called for by the original contract.

In *Applebaum* v. *Wechsler* (1957), 350 Mich 636, 649, 650, defendant attempted to amend pleadings to include the issue of contractual capacity. The Court held that:

"The assertion of such a defense, not pleaded, would come as a surprise to an opposite party. * * * The proof of insanity (or the rebuttal of such proof) normally requires testimony of a technical nature not utilized in the course of an ordinary trial. * * * The purpose of modern pleading is to give the parties adequate notice of the issues they are to meet. The pretrial conference is intended to narrow and simplify such issues, to consider the necessity of amendments to the pleadings, and, generally speaking, to assure that the issues raised may be expeditiously tried. Its purpose is to achieve rapid and efficient administration of justice by eliminating traps and surprises."

The permitted amendment did not subvert any of these purposes. It simply presented the issue in a clearer manner.

In *Scott* v. *Cleveland* (1960), 360 Mich 322, 335, the amendment allowed completely changed the plaintiff's theory of the case without providing the defendants with an opportunity to prepare a defense thereto. This is not true of the amendment in the instant case.

Plaintiff initially contended that the changes made should be considered as extras to the original contract. It is apparent that the amendment was sought to draw attention by way of clarification to the fact that the term "extras" may be erroneously considered as referring only to work done over and above the work called for under the original subcontract agreement. The amendment was to make it clear that the claim included changes and additions made before the subcontract was completed and therefore had to reflect deductions for work called for under the original contract not in fact performed, the cost of what had to be undone, and the cost of the work in fact done under the alleged new arrangement directly with the defendant.

Thus, while plaintiff attempts to clearly distinguish between what was and was not done under the original contract and reflect this in the cost of the changes he is not changing his theory of the case so as to create surprise or prejudice to the defendant. Amendments to clarify or state the matter more fully may be allowed in the discretion of the court.

The test of whether a new cause of action has been introduced is stated in *Hapke* v. *Davidson* (1914), 180 Mich 138, 148, which quotes from 1 Encyclopedia Pleading & Practice, p 564:

" 'The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.' "

This test explains the result reached in *Jones* v. *Pendleton* (1908), 151 Mich 442. The original declaration in that case counted on a promise made by the defendant to pay plaintiff a commission on the sale of real estate. The plaintiff did not make the sale, but the sale was made through the intervention of another party. It was held that, although there was testimony tending to show that defendant told plaintiff he should have his commission though another party should effect the sale, he could not recover. Plaintiff then amended his declaration so as to include the promise that he should have the same commission though another party effected the sale. The Court in deciding whether the amendment should have been permitted held:

"The plaintiff has but one cause of action. He failed to properly describe it. The question is, whether the court has the power to permit plaintiff to amend his declaration so that he may recover on the precise cause of action for which he brought suit, but which he failed to properly describe in his declaration."

In essence plaintiff's theory throughout the case was that plaintiff was entitled to compensation for construction extras and changes made before completion of the building project and that such claim was based upon authorization therefor from the defendant. In short, it was clear that the action always was for amounts over and above the amount agreed upon under the original contract with the contractor which original contract was never fully performed. This theory was concisely, but minimally stated in the pretrial summary long before trial; it was expressly stated to the jury in plaintiff's opening statement to which defendant did not object. It is doubtful that plaintiff needed to amend even though plaintiff chose to do so to clarify the action.

Whether this amendment was necessary to plaintiff's recovery once his case was proved is questionable in light of *Banwell* v. *Risdon* (1932), 258 Mich 274, where changes in the original plan were treated as extras. In that case certain items were disallowed because the cost of the item did *not* take into consideration the change in price resulting from the change in plans. See, also, *Quisle* v. *Brezner* (1920), 212 Mich 254. In the case at bar plaintiff is attempting to allocate costs to cover these changes.

Defendant also claims that the plaintiff could not be authorized to make any changes until defendant was notified of the changes and relies in this regard upon the letter of December 23, 1963 (exhibit 5) which he caused the architect to send to the plaintiff which letter stated:

"Any work from the above date that is not included in your contract with the general contractor shall not be done without a price being given to the owner before proceeding."

There is no written contract in the case at bar. Plaintiff and the general contractor had an oral agreement for the installation of electrical appliances. This agreement and the above letter could be superseded as between the plaintiff and defendant by their mutual consent. This is true even where the original contract is in writing. See *Banwell* v. *Risdon, supra,* and *Minkus* v. *Sarge* (1957), 348 Mich 415, where the court again pointed out that the parties had the right to modify the original arrangement by parol. The burden rests upon the party claiming a subsequent oral agreement to prove the modification or change. The jury found such a modification or change in this case and there is evidence on the record to support the conclusion.

Affirmed. Costs to appellee.

McGREGOR, P. J., and BURNS, J., concurred.