## CANVASSER CUSTOM BUILDERS, INC., *v.* SESKIN

1. CONTRACTS—WRITTEN INSTRUMENT—EVIDENCE—PAROL EVIDENCE.

   A written agreement which is complete upon its face, unambiguous in its terms, intended by the parties to be a complete integration of their agreement, and signed by the parties to be bound cannot be varied or contradicted by parol evidence in the absence of fraud, duress, or mistake.

2. CONTRACTS—EVIDENCE—PAROL EVIDENCE.

   Parol evidence may be introduced for purposes of proving which of two alleged agreements was the actual contract between two parties.

3. CONTRACTS—WRITTEN INSTRUMENT—SUFFICIENCY—EVIDENCE.

   The test of the completeness of a writing proposed as a contract is the writing itself; if it bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject matter of the contract, and it is reasonable to conclude that the parties have therein expressed their final intentions in regard to matters within the scope of the writing, the written instrument will be deemed a complete and unalterable exposition of such intentions, but if the writing shows an informality on its face, there will be no presumption that it contains all the terms of the contract.

4. CONTRACTS—WRITTEN INSTRUMENT—SUFFICIENCY.

   Determination of trial court that a document signed by the parties, containing certain terms for a building contract, did not represent a final agreement *held,* proper where the document bore the title "preliminary notes" and a notation in the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 77.
     30 Am Jur 2d, Evidence § 1016 *et seq.*
[3, 4] 17 Am Jur 2d, Contracts § 23.
[5] 36 Am Jur, Mechanics' Liens §§ 162, 163.

margin of the paper stated that it was "to be reduced to A.I.A. contract"; therefore, it was not error for the trial court to consider parol evidence as to what the terms of the agreement between the parties were.

5. CONTRACTS—BUILDING CONTRACT—MECHANIC'S LIEN—ITEMIZATION OF COSTS.
   Trial court's imposition of mechanic's lien on defendants' building for an amount based upon a written itemization of costs must be modified to eliminate a sum for early completion of the building where the trial court in its opinion clearly disregarded plaintiffs' "early performance" claim.

Appeal from Macomb, Howard R. Carroll, J. Submitted Division 2 June 9, 1969, at Detroit. (Docket No. 3,048.)    Decided August 26, 1969.    Rehearing denied October 15, 1969.    Application for leave to appeal filed November 5, 1969.

Complaint by Canvasser Custom Builders, Inc., a Michigan corporation, against Alex Seskin, Muriel Seskin and Service Investment Co., a Michigan corporation, to foreclose a mechanic's lien.    Judgment for plaintiff.    Defendants appeal.    Judgment modified and affirmed.

*Felix S. Kubik,* for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for defendants.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

FITZGERALD, P. J.    This appeal is based on an equitable action to foreclose a mechanic's lien filed by the plaintiff and general contractor, Canvasser Custom Builders, against defendants Alex Seskin, Muriel Seskin and Service Investment Company. Defendant Alex Seskin is the sole stockholder of

Service Investment Company, which is the owner of record of the property involved in this action. Muriel Seskin is the wife of defendant Alex Seskin.

The dispute is contractual in nature and arose over the construction of the Abbey Convalescent and Nursing Home in Warren, Michigan. The principal witnesses on matters relating to the disputed agreements for construction of the nursing home are Robert Canvasser for plaintiff and Alex Seskin for defendant.

The long chain of events which culminated in litigation between the parties began at a meeting in the offices of architects Tobocman & Lawrence, who had been engaged by defendants Seskin to draw the plans and specifications for the Abbey Convalescent and Nursing Home. During this meeting in April, 1962, Mr. Seskin met Marvin Canvasser, an officer of plaintiff corporation. Several meetings were held between the parties and on July 27, 1962, a document entitled "Preliminary Notes" was drafted by the parties and later admitted into evidence during the trial as Exhibit D, the alleged written agreement between the parties regarding construction of the nursing home. Under defendants' interpretation of Exhibit D, plaintiff was to be paid a fixed fee of $25,000 for supervision of construction and an amount for "unique contributions", determination of the amount being left to the sole discretion of defendants.

It is alleged by plaintiff that the only contract between the parties was oral in nature, the product of a telephone conversation between Robert Canvasser and Alex Seskin on July 27, 1962, and confirmed by a handshake the following day. It is alleged further that no final written contract was ever executed although they repeatedly requested such an agreement. Plaintiff avers that Exhibit D was

never intended by the parties to express the full understanding between them as it was clearly marked "Preliminary Notes" and "to be reduced to A.I.A. contract". Under the aforementioned oral agreement plaintiff was to be paid:

A. Base fee of $25,000 to be paid within 2 years. No interest was to be charged if paid within one year from date of closing and interest at 7% if not so paid within one year;

B. 40% of any savings if construction costs were less than $240,000;

C. 10% for extras;

D. $1,000 per week for each week completion was achieved prior to February 1, 1963; and

E. Reasonable compensation for so-called unique services which were apparently defined as those that are not normal contractor services.

The defendants deny the existence of items B, C and D of the alleged oral agreement. After July 27, 1962, the date of the two disputed agreements, construction commenced in accordance with the plans and specifications.

On January 29, 1963, the city of Warren, Michigan, issued a conditional certificate of occupancy, and on February 7, 1963, Robert Canvasser presented a "special bill" to defendant Alex Seskin who refused to pay, stating that it was contrary to their prior written agreement of July 27, 1962. On February 15, 1963, defendants delivered a check for $3,000 as payment in full for "unique contributions" although, as indicated in the record, they felt there was nothing due plaintiff in that connection and payment was made under protest to avoid interference with defendants' mortgage.

On March 6, 1963, plaintiff took steps to perfect a mechanic's lien and on June 4, 1963, action was begun. Defendants answered, denying the existence

of the oral agreement and contending that the only agreement was in writing and was contained in the preliminary agreement of July 27, 1962 (Exhibit D). Defendants also counterclaimed, denying completion in accordance with plans and specifications and charging faulty construction, stating that $32,-950 would be required to correct the defects. Fifteen thousand dollars had been paid plaintiff on sums due before completion of the building and as mentioned above, an additional $3,000 thereafter for "unique services".

It was the holding of the lower court that the contract between the parties was evidenced by the oral agreement of July 27, 1962, and the written notations of the same date were not the final intentions of the parties and, hence, not binding upon them. The judgment provided that there was a lien on the premises in the amount of $23,585, taxation of $793.50 in costs, witness subpoena fees of $60, attorney fees in the amount of $4,900, and interest of $5,159.42 to the date of judgment; statutory interest on the judgment to commence running with the judgment and a sheriff's sale to be made within 30 days of judgment.

Motion for a new trial was made by defendants and subsequently denied by an order dated November 28, 1966. A judgment was entered on November 28, 1966, from which this appeal was brought.

The main issue with which we are faced on this appeal is whether the trial court erred in its determination that the alleged written agreement entitled "Preliminary Notes" signed and dated on July 27, 1962, was superseded by the alleged oral agreement of the same date.

It is the contention of the plaintiff that a construction contract may be orally agreed upon after the signing of a series of preliminary notes of con-

versations which were never reduced to a formal
A.I.A. contract as originally intended. Plaintiff
also asserts that defendants' Exhibit D was not so
complete in its terms as to preclude oral evidence
which was contradictory. The defendants' position
is that the written agreement was the only contract
between the parties and the trial court erred in ad-
mitting parol evidence to contradict a written in-
strument which stated the basic terms of an under-
standing and was dated and signed by the parties
to be bound.

In the case at bar, the trial court was faced with
the difficult task of determining which of the two
alleged agreements was to stand as a final monu-
ment to the thoughts and understandings of the
parties. It is a universal rule of law that an in-
strument which is complete upon its face, unam-
biguous in its terms, intended by the parties to be
a complete integration of their agreement and
signed by the parties to be bound cannot be varied
or contradicted by parol evidence in the absence of
fraud, duress or mistake. However, it is an equally
well entrenched rule that parol evidence may be in-
troduced for purposes of proving to the court which
of two alleged agreements was the actual contract
of the parties. This seemingly paradoxical situa-
tion is explained in 3 Corbin on Contracts, § 582, p
450, which states:

"The very testimony that the 'parol evidence rule'
is supposed to exclude is frequently, if not always,
necessary before the court can determine that the
parties have agreed upon the writing as a complete
and accurate statement of terms. The evidence that
the rule seems to exclude must sometimes be heard
and weighed before it can be excluded by the rule."
See, also, 9 Wigmore, Evidence, § 2430(2).

The test of a document's completeness is set forth in *Brady* v. *Central Excavators, Inc.* (1947), 316 Mich 594, which states:

"The test of the completeness of the writing proposed as a contract is the writing itself; so if it bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject matter of the contract, and it is reasonable to conclude that the parties have therein expressed their final intentions in regard to matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions, but if the writing shows an informality on its face, there will be no presumption that it contains all the terms of the contract."

It is clear from an examination of Exhibit D that it may well have been the intention of the parties that it should not represent a final agreement. The document, although dated and signed, is titled "Preliminary Notes" and a notation on the margin of the paper states that it was "to be reduced to A.I.A. contract", which obviously denotes that something of a more final and complete nature was to follow. We note further that the instrument is a maze of scratched-out sentences and afterthought additions. It does not clearly appear that the parties "have therein expressed their final intentions in regard to matters within the scope of the writings", and hence does not merit the presumption of completeness set forth in *Brady, supra.* See, also, *Antonoff* v. *Basso* (1956), 347 Mich 18.

In the transcript of the lower court proceedings, testimony of Alex Seskin and Robert Canvasser indicates that Exhibit D was a memorandum of notes compiled from discussions which took place

in July, 1962. Both parties agreed that it was to be reduced to a more complete contract at a later date, but it appears that although an instrument was prepared, it was never signed and agreed to by both parties. As the trial court stated in its opinion on defendants' request for reconsideration of findings: "It leads to the inescapable conclusion that Exhibit D was never considered by either party to be the agreement between the parties."

The alleged oral contract does not differ so greatly from defendants' Exhibit D as to appear that the preliminary notes were entirely discarded. The basic difference lies in three provisions whose existence was entirely denied by Alex Seskin. A close examination of Exhibit D discloses that the alleged "savings provision" was included in some form in the preliminary notes; however, no mention appears to be made regarding a percentage figure for extras and a bonus for early completion of the building by the plaintiff.

We note from the opinion of the trial court that proof of the "early performance" claim was not clearly established and hence was disregarded. Thus, the present dispute concerned only the terms of the savings provision and whether compensation would be paid for extras. The trial in the instant case was quite lengthy and considerable testimony was taken from both sides which was considered and weighed by the trial judge in reaching his conclusion.

As was stated above, the document entitled "Preliminary Notes" and introduced as Exhibit D does not appear to be complete upon its face; it conveys considerable uncertainty and, by its own nature and wording, does not purport to be the final legal obligation between the parties.

We therefore affirm the decision of the trial court and hold that it did not err in its consideration of

parol evidence, and we have also concluded from our examination of the record that the trial court did not clearly err in finding that an oral agreement of July 27, 1962, superseded all prior preliminary negotiations and hence became the final and binding contract of the parties for the construction of the Abbey Convalescent and Nursing Home.

We note that the trial court imposed a lien in the amount of $23,585 which was based upon the itemization of costs found in Exhibit IV. Since the "early performance" claim was not clearly established and was disregarded by the trial court, we hereby exclude item 47 of Exhibit IV and order the amount of the lien reduced by $2,500 to read $21,085.

Costs to appellees.

All concurred.