ENSIGN PAINTING COMPANY *v.*
ALFRED A. SMITH, INC.

OPINION OF THE COURT

1. CONTRACTS — UNILATERAL — PERFORMANCE — VALIDITY.

   A written purchase order by defendant under which plaintiff substantially performed was a valid unilateral contract binding upon both parties.

2. CONTRACTS — WRITING — ORAL AGREEMENTS — EVIDENCE — ADMISSIBILITY.

   A valid written contract supersedes all prior oral agreements between the parties and, in the absence of ambiguity in the writing, or of fraud, duress, or mistake in the making of it, evidence tending to alter, vary, or to contradict the written agreement is inadmissible.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 17 Am Jur 2d, Contracts § 45.
   Acting on order for goods as an acceptance thereof. **29 ALR** 1352.
[2] 17 Am Jur 2d, Contracts §§ 260–262.
[3, 5] 30 Am Jur 2d, Evidence § 1023.
[6] 17 Am Jur 2d, Contracts § 459.
[7–12] 30 Am Jur 2d, Evidence §§ 1016, 1033.
[13, 14] 17 Am Jur 2d, Contracts § 459.
[15] 17 Am Jur 2d, Contracts § 47.

3. CONTRACTS — WRITTEN — BILATERAL — UNILATERAL — EVIDENCE — PAROL EVIDENCE RULE — APPLICATION.

The parol evidence rule is not limited to formally written bilateral agreements but also applies to a unilateral written offer by one party where the other party undertakes performance pursuant to that particular offer.

4. CONTRACTS — WRITTEN — UNILATERAL — ACCEPTANCE — NOTICE — PERFORMANCE.

Notice of plaintiff's acceptance of a written unilateral purchase order was unnecessary where the purchase order called for performance, plaintiff accepted by a substantial performance, and notice of acceptance was not a condition dictated in that purchase order.

5. CONTRACTS — UNILATERAL — ACCEPTANCE — PERFORMANCE — PAROL EVIDENCE — ADMISSIBILITY.

Substantial performance by plaintiff painting company under a unilateral written purchase order constituted an acceptance of that entire order which, being a binding written contract, could not be varied or contradicted by parol evidence, in the absence of any ambiguity, fraud, duress, or mistake.

6. CONTRACTS — SUBSEQUENT WRITTEN AGREEMENTS — SUPERCESSION.

A second written purchase order issued to permit plaintiff to complete paint work not completed under a prior written purchase order did not constitute an entirely new agreement superseding the first purchase order, where the second order did not contain language which either altered or amended the first order, nor make any reference to its predecessor.

### DISSENTING OPINION
### LEVIN, J.

7. CONTRACTS — ACCEPTANCE — PAROL EVIDENCE — ADMISSIBILITY.

*Parol evidence rule did not preclude trial judge, as trier of fact, from considering provisionally-taken testimony showing that plaintiff painting company did not accept defendant contractor's written unilateral purchase order which therefore never became a contract, and that the parties' true contract was made orally.*

8. CONTRACTS — ACCEPTANCE — PAROL EVIDENCE — ADMISSIBILITY.

*Parol evidence rule did not preclude admission of plaintiff's testimony that a written unilateral purchase order issued to plaintiff by defendant never became a contract because plaintiff had neither signed nor accepted it in writing where such testimony did not seek to vary the terms of the purchase order.*

9. CONTRACTS — PRIOR NEGOTIATIONS — PAROL EVIDENCE — ADMISSIBILITY.

*A writing that has been adopted as the complete integration of the terms of a contract may not be varied by evidence of negotiations or understandings that preceded its adoption; however, the parol evidence rule does not preclude evidence showing that no contract was made.*

10. CONTRACTS — ACCEPTANCE — ORAL MODIFICATION — PAROL EVIDENCE — ADMISSIBILITY.

*Parol evidence may be introduced to show that an unsigned document was not accepted, or that it was orally modified before it was orally accepted or performance was rendered.*

11. CONTRACTS — ORAL MODIFICATION — PAROL EVIDENCE — ADMISSIBILITY.

*Having permitted defendant contractor to prove testimonially that a written purchase order had been sent to plaintiff painting company and that plaintiff had rendered performance as required by that order, the trial judge should have allowed plaintiff the same right to prove by parol evidence that, before it had rendered any performance, it had orally rejected the purchase order terms or the parties had modified them by mutual oral agreement.*

12. CONTRACTS — PAROL EVIDENCE — ADMISSIBILITY.

*Parol evidence may be introduced to prove which of two alleged agreements is the parties' actual contract because the very testimony that the parol evidence rule is supposed to exclude is frequently, if not always, necessary before a court can determine that the parties have agreed upon a writing as a complete and accurate statement of their contractual terms and, paradoxically, the evidence that the rule seems to exclude must sometimes be heard and weighed before the rule can exclude it.*

13. CONTRACTS — ORAL CONTRACTS — SUPERCESSION OF TERMS.

*A prior oral agreement between the parties was not superseded as a matter of law by a later written purchase order where plaintiff's representative testified without contradiction that he had objected to the purchase-order terms before plaintiff rendered any performance thereunder and defendant's representative, who was not present at trial, had agreed that the objected-to provision of that purchase order would not supersede the earlier oral contract.*

14. CONTRACTS — UNEXECUTED WRITING — SUPERCESSION OF TERMS.

*A written unsigned document bearing a date later than the date on which an oral contract was in fact entered into does not supersede the prior oral contract since a later unsigned written document has no greater sanctity than an actual earlier oral contract.*

15. CONTRACTS — ORAL CONTRACTS — ATTEMPTED MODIFICATION — CONSENT.

*An oral contract obligating plaintiff to paint specified areas, except partitions, could not be changed without plaintiff's consent by defendant's subsequent written unilateral purchase order requiring plaintiff to paint those partitions, there being no rule of law requiring plaintiff to reject in writing defendant's subsequent written purchase order or to send defendant a confirmatory written memorandum setting forth that plaintiff's representative had objected to the partition—painting provision and that defendant's representative had agreed that the objected-to provision did not supersede the parties' prior oral contract.*

Appeal from Oakland, Arthur F. Moore, J. Submitted Division 2 May 12, 1969, at Detroit. (Docket No. 6,205.) Decided February 4, 1970. Rehearing denied April 16, 1970. Leave to appeal granted September 23, 1970. 384 Mich 759.

Complaint by Ensign Painting Company, a Michigan corporation, against Alfred A. Smith, Inc., a Michigan corporation, for money due under a work contract. Judgment for plaintiff with a set-off to defendant. Plaintiff appeals set-off. Affirmed.

*Nelson S. Shaperd,* for plaintiff.

*Davis, Hayward, Rann & Slavens,* for defendant.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

FITZGERALD, P. J. This appeal is concerned with a contractual dispute arising from an agreement for painting of the Kyle office building in Oak Park, Michigan. The defendant, Alfred A. Smith Company, was engaged as general contractor in the construction of the Kyle building. The plaintiff, Ensign Painting Company, was a subcontractor employed by defendant to paint the building in question.

Testimony taken during the trial, over the objections of defendant, indicated that during the spring of 1965, a meeting was held between representatives of the general contractor and the plaintiff regarding prices for the painting of the Kyle building. During this discussion, the job plans were examined to determine the scope of plaintiff's work. The plans indicated that prices submitted for the painting trade should include an amount for painting approximately 2,000 lineal feet of dry wall stud partitions to be erected in the proposed tenant areas of the building. The plaintiff submitted a bid of $5,225, and the parties orally agreed that this price included only the painting of exterior walls and stairwells and specifically excluded any figure for the partition work in the tenant areas.

Approximately two weeks later, a purchase order dated April 29, 1965, was sent by defendant to the plaintiff which stated:

"Furnish necessary labor, material, equipment, and services and perform all work required in the general conditions to furnish, install and complete

the painting and decorating work—pages 1501–1505
—all in accordance with plans and specifications and
addendums 1, 2 and 3 prepared by Seymour J.
Levine, A. I. A. Architects—Job No. 6137 for the
sum of Five Thousand Two Hundred Twenty-Five
Dollars.  Sales Tax included.  Payments to be made
in accordance with article 37 A. I. A. Document
A–201.  Entire project to be completed October 1,
1965."

The plans and specifications mentioned in the pur-
chase orders were mailed to the plaintiff on May 12,
1965.  These specifications as well as the plans in-
dicated that the contract was to include the painting
of the exterior walls, stairwells and 1,820 lineal feet
of dry wall stud partitions.

The plaintiff commenced work on the Kyle job
during the spring of 1965, and in February, 1966 had
completed the paint work, with the exception of the
interior partitions.  During the same month, a writ-
ten billing invoice was sent to defendant stating that
its obligation had been performed in accordance with
the purchase order of April 29, 1965, and the plans
and specifications referred to therein.  Plaintiff en-
countered considerable difficulty in securing payment
and the matter was finally turned over to an attor-
ney who collected $5,225.

Later, it became apparent that additional paint
work would be required to complete the project.  In
June of 1966, plaintiff submitted a bid for the addi-
tional work and defendant issued a second purchase
order to allow completion of the Kyle job.  The
plaintiff completed most of the work and billed de-
fendant for the amount.  Defendant refused to pay
several of the invoices, alleging that they were being
charged for work plaintiff was already obligated to
complete in accordance with the original purchase
order of April 29, 1965.  Plaintiff then brought suit

in the Oakland county circuit court to collect the amount due on the Kyle building as well as unpaid invoices resulting from other projects.

The court held that the purchase order of April 29, 1965, and the plans and specifications referred to therein superseded all oral understandings between the parties. The court refused to consider oral testimony which would vary the written terms of the purchase order, which was held to be a valid unilateral contract, binding upon both parties when substantial performance had been accomplished.

Plaintiff was given judgment of $1,202.14, the amount of unpaid invoices independent of the Kyle project. Defendant was granted a set-off of $654.94 for money paid to Villaire Painting Services for work the plaintiff should have done on the project, leaving a net judgment for plaintiff of $547.20.

It is the contention of plaintiff that there was a valid oral contract between the parties for the painting, specifically excluding the disputed partition work, and the purchase order of April 29, 1965, was merely an unaccepted counter-offer submitted by defendant. The defendant maintains that there existed a valid written contract between the parties as evidenced by the purchase order and therefore oral testimony is inadmissible to vary or contradict the terms of a written contract which has been accepted and performed by both parties.

The main issue with which we are faced on this appeal is whether the purchase order of April 29, 1965, constituted a valid contract which superseded all prior oral contracts. We are also asked to consider whether the subsequent purchase order of defendant, dated August 2, 1966, alters or amends the terms of the first order, thus creating a new and independent contract governing the painting of interior partition work.

It is the holding of this Court that the purchase order dated April 29, 1965, constituted a valid contract superseding all prior oral agreements between the parties. This position is explained and upheld by *Shannon* v. *Polish Falcons of America, Nest No. 86* (1957), 348 Mich 92, 105, quoting 12 Am Jur, Contracts, § 233, p 757:

"No parol agreement prior to, or contemporaneous with, a written contract, which tends to vary or contradict either its express provisions or its legal import thereto, can be considered in interpreting it. A parol agreement inconsistent with a written agreement made contemporary therewith is void. Parol understandings, although they induce the making of a written contract, are merged in the writing so that they cannot be used to change the contract or show any intent different from that expressed in the instrument."

No ambiguity exists in the questioned purchase order and we find no indication of fraud, duress or mistake. The order specifically provides for plaintiff's completion of the paint work on the Kyle office building in accordance with pages 1501–1505 of the job specifications and as noted in the job plans. The order contains all of the necessary elements of a contract except that it was not executed by both of the parties. However, in the spring of 1965, plaintiff began performance of the order and substantially completed the required work on February 28, 1966.

The case of *Cohen* v. *Jackoboice* (1894), 101 Mich 409, is in point, for it deals with enforcement of a unilateral contract in which one of the parties had undertaken performance of the obligation under a written agreement while the second party was attempting by way of parol evidence to show that, under a prior oral agreement, the contract could be terminated at his will. The court stated:

"There is no ambiguity in this instrument. It is an order to insert an advertisement, to occupy a given space, for a given period, at a given price, and specifies when the price agreed upon shall be paid. It contains all the *indicia* of a contract, except that it wasn't executed by both parties. Defendant does not attempt to supply an omission in the instrument. He does not undertake to show any fraud or misrepresentation in matters of inducement."

The court ultimately held that "the instrument * * * is more than a mere memorandum. It has all the elements of an agreement, and the admission of parol testimony tending to contradict terms which are plain and explicit was erroneous." In an analysis of the case cited, *supra,* and 17 CJS, Contracts, § 59, p 729 it is apparent that the rule outlined in the *Polish Falcon* case, *supra,* is not limited to formally written bilateral agreements, but also has been extended to a unilateral written offer by one party where the other party undertakes performance pursuant to that particular offer. In the case at bar, the plaintiff, having undertaken substantial performance under the unilateral written order, accepted the entire order as a contract.

The existence of a written contract embodied in the terms of the April 29, 1965, purchase order is further exemplified and conceded by a billing invoice, dated February 28, 1966, sent by plaintiff to defendant. The bill makes specific reference to the aforementioned purchase order and states that it is for:

"Labor, materials and equipment to paint and decorate at the Kyle office building *in accordance to* [*sic*] *plans and specifications.*" (Emphasis supplied.)

As mentioned, *supra,* both the plans and specifications specifically provide that the work which is the subject of this dispute is to be painted and included

as part of the based bid.   The order was therefore a unilateral contract and acceptance occurred when plaintiff had substantially completed performance. Notice of this acceptance was unnecessary since the offer in question called for performance, and notice of acceptance was not a condition dictated in the purchase order.

Since we have held that the original purchase order was a binding written contract, it cannot be varied or contradicted through introduction of parol evidence, unless there has been a showing of fraud, duress or mistake, and no such allegation was either made or proved in the case at bar.   See *Hawkeye Casualty Co.* v. *Frisbee* (1947), 316 Mich 540, *Getter* v. *Levine* (1946), 315 Mich 353, and *Danto* v. *Charles C. Robbins, Inc.*, (1930), 250 Mich 419.   The words used by the trial court summarize the basis of our opinion and serve to explain our reasoning when it stated:

"I think obviously this is a written instrument which on its face is not ambiguous, nor is there any fraud alleged, and consequently the written agreement was to prevail.   Payment has been made on the written agreement."

It is further argued by the plaintiff that even if the written purchase order dated April 29, 1965, was a binding contract, the parties could and actually did change it.   Such cases as *Bishop Electric, Inc.,* v. *Simpson* (1967), 7 Mich App 391, and *Green* v. *Millman Brothers, Inc.* (1967), 7 Mich App 450, are cited in support of this position.   While we do not question the principle set forth, these cases are not applicable to the facts in the case at bar.   The plaintiff argues that defendant's second purchase order dated August 2, 1966, called for the painting of dry wall partitions and was, in effect, an entirely new

agreement superseding the original contract. We reject this line of reasoning, as it is entirely without a logical or factual basis.

The subsequent purchase order of August 2, 1966, specifically stated:

"Unit prices for *additional work* at the Kyle office building."

The order does not contain language which either alters or amends the original order, nor is reference even made to its predecessor.

Judgment of the lower court affirmed. Costs to appellees.

T. M. Burns, J., concurred.

Levin, J. (*dissenting*). The plaintiff, a painting contractor, entered into a contract with the defendant to paint a building being constructed by the defendant, a general construction contractor. The dispute concerns the amount of work plaintiff agreed to perform under the contract. The plaintiff claims the contract was agreed upon orally; the defendant asserts the contract is evidenced by a writing not signed by the plaintiff.

The majority affirm the trial judge's ruling that the parol evidence rule precluded him from considering, as trier of fact, the testimony, provisionally taken, of plaintiff's witnesses. This testimony was offered to show that a purchase order sent by the defendant to the plaintiff was not accepted by the plaintiff and, for that reason, never became a contract, that the true contract was made orally. In my opinion testimony is admissible for that purpose.

It is plaintiff's testimonially supported claim[1] that the parties entered into an oral contract several

---

[1] Benjamin Hexham, an executive of the plaintiff, testified that the plaintiff and the defendant had done business together over a

weeks before the defendant sent the purchase order,
that the purchase order contained a provision re-
quiring the plaintiff to do painting work not required

period of 20 years. Some of the transactions were covered by writ-
ings, others were entirely oral.

Hexham met the defendant's representative, Milton Dickson, to
discuss painting the building.

Over objection, Hexham testified that he looked over the plans
and that he and Dickson agreed that the plaintiff would do the work
for $5,252, and that it was also agreed that plaintiff's work would
not include the painting of 2,000 feet of interior partitions which,
according to a note attached to the plans, was part of the work.

Two weeks to a month later, plaintiff received the defendant's
purchase order number 1802 dated April 29, 1965. The purchase
order stated that for a price of $5,225 the plaintiff would do all the
painting and decorating work provided for in plans and specifications
that had been prepared by the architect; the plans and specifications
were specifically identified by architect job number and page numbers.

Hexham said that upon receipt of the purchase order he called
Dickson and reminded him that interior partitions were not included
and that Dickson responded, " 'That's right.' Well, I can't remember
exact words, that's right, okay, go ahead, get the work done. That
is all. We want to get the building up. Something of that nature."

(The record does not explain the discrepancy between Hex-
ham's testimony that the purchase price was $5,252 and the pur-
chase order price of $5,225. The parties have offered no explanation
and apparently do not regard it of any importance. The explanation
may be simply that the court reporter transposed the last two digits.)

Subsequently, on May 12, 1965, the defendant sent the plaintiff
copies of the specifications. The plaintiff does not claim that there
were any further conversations regarding the partitions following
the receipt of the specifications. The specifications provided that they
cover "all work throughout the building, the interior and exterior
usually painted or finished to make a complete job, in every respect."

On February 28, 1966, the plaintiff billed the defendant for $5,225;
plaintiff's invoice stated that the work had been done "in accordance
to [sic] plans and specifications" and referred to defendant's pur-
chase order number 1802. (The fact that the plaintiff's invoice to
the defendant mentioned the purchase order and stated that the
work was done in accordance with plans and specifications is, indeed,
some evidence negating the plaintiff's claim that the purchase order
did not evidence the contract between the plaintiff and the defendant.
But it is merely evidence to be weighed together with the testimony
regarding the conversations alleged to have taken place before and
after the sending of the purchase order.)

The plaintiff did paint some of the interior partitions. The
plaintiff claimed that this work was done pursuant to a separate agree-
ment evidenced by the plaintiff's bid in its letter of June 9, 1966
and the defendant's responding purchase order of August 2, 1966.
The plaintiff's letter stated, and the purchase order repeated, unit
prices, i.e., so much per square foot and so much per door, but no
quantities were mentioned. The purchase order stated that these unit
prices were "for additional work."

under the earlier oral contract, that upon receipt of the purchase order, plaintiff called the defendant and defendant thereupon acknowledged the inconsistency and stated that the plaintiff should perform in accordance with the terms of the oral contract.

The plaintiff performed the alleged oral contract. The defendant contends, however, that the purchase order is the contract and that the plaintiff is required to render the additional performance therein provided. Plaintiff brought this action for nonpayment

---

The plaintiff contends that the defendant's agreement to pay for the partition work supports the plaintiff's claim that it was not required to do that work under the April 29, 1965 purchase order. The defendant responds that the plans provided only for a certain minimum quantity of partition painting and that the June 9, 1966 letter and the August 2, 1966 purchase order dealt with additional work beyond that specified in the plans and specifications.

The plans prepared by the architect stated that they covered 1500 lineal feet of wall in tenant areas and 320 lineal feet of wall between tenants plus 140 doors. As previously mentioned, Hexham testified that there was a note attached to the copy of the plans which he looked at when he originally bid the job which stated that the job included painting 2000 lineal feet of partitions.

It would, therefore, appear that the *specifications* themselves are of no importance in resolving the dispute. Whatever was meant by the words in the specifications stating that they cover "all work throughout the building, the interior and exterior usually painted or finished to make a complete job, in every respect," those words were not meant to require the plaintiff to paint partitions beyond the 1,860 (1,500 plus 360) lineal feet referred to in the plans or the 2,000 lineal feet referred to in the note attached to the plans. This the defendant appears to concede when it states that there was work to be done that was not covered by the plans but which the plaintiff was not obliged to do under the April 29, 1965, purchase order because it was "additional work."

George Lerchen, a former employee of the defendant, testified that he was in charge of coordinating the subcontractors employed by the defendant to construct the building. He testified that Dickson told him that he had entered into a contract with the plaintiff for the painting of the building and that the contract did not include the painting of partitions, that "we will have to take that up at a later date." He testified further that subsequently he advised Dickson that the plaintiff would not paint the partitions until an agreement had been reached regarding price and that, pursuant to Dickson's instructions, he thereupon solicited a price, following which the plaintiff sent the letter of June 9, 1966 and the defendant responded by sending the purchase order of August 2, 1966.

Milton Dickson did not testify. There was no testimony contradicting the testimony of Benjamin Hexham or George Lerchen.

of its invoices; the defense is that the plaintiff did
not perform all the required work.

Under the parol evidence rule, a writing that has
been adopted as the complete integration of the terms
of a contract may not be varied by evidence of nego-
tiations or understandings that preceded its adop-
tion.[2] The testimony offered by the plaintiff did not,
however, seek to vary the terms of the purchase
order.[3] Rather, it was the plaintiff's contention that
the defendant's purchase order, neither signed nor
accepted in writing by the plaintiff, never became a
contract.

Just as parol evidence may be offered to prove that
the signature on a writing is a forgery and to show
(as in this case) that a purchase order or other docu-
ment was sent by one party to another and that the
recipient later rendered performance required by the
document, so, too, parol evidence may be introduced
to show that an unsigned document was not accepted,
or that it was orally modified before it was orally
accepted or the performance was rendered.

In this case the facts that a purchase order was
sent by the defendant to the plaintiff and that the
plaintiff rendered performance required by the pur-
chase order, which facts defendant claims establish
that the purchase order became a contract, were all
established by parol; on the same principle which
permits those facts to be proved testimonially, the
plaintiff had the right to introduce testimony that
before any performance was rendered the terms of

2 3 Corbin on Contracts, § 573, p 357.
3 Cf. Brady v. Central Excavators, Inc. (1947), 316 Mich 594, 608
et seq., and Massachusetts Bonding & Insurance Co. v. Transamerican
Freight Lines, Inc. (1938), 286 Mich 179, recognizing that evidence
offered to show that a writing purporting to represent the contract
of the parties was not intended by them to constitute a complete
integration of all their understandings may be admitted because such
evidence does not seek to vary the terms of the writing but rather
to establish that it does not constitute a complete integration of the
entire contract.

the purchase order were orally rejected or, by mutual oral agreement of the parties, modified.

In *Canvasser Custom Builders, Inc.* v. *Seskin* (1969), 18 Mich App 606, the applicable principle was clearly stated by our Court (p 611):

"[I]t is an equally well-entrenched rule that parol evidence may be introduced for purposes of proving to the Court which of the two alleged agreements was the actual contract of the parties. This seemingly paradoxical situation is explained in 3 Corbin on Contracts, § 582, p 450, which states:

" 'The very testimony that the "parol evidence rule" is supposed to exclude is frequently, if not always, necessary before the court can determine that the parties have agreed upon the writing as a complete and accurate statement of terms. The evidence that the rule seems to exclude must sometimes be heard and weighed before it can be excluded by the rule.'

"See, also, 9 Wigmore, Evidence, § 2430(2)."[4]

This controlling principle was also applied in *Tuuk* v. *Andersen* (1969), 21 Mich App 1. There, as here, the defendant relied on a writing not signed by the plaintiff and plaintiff's rendition of performance required by the writing after its receipt. We held that the trial judge ruled correctly when he allowed the

---

[4] How could the law be otherwise? Suppose a seller and a buyer have been doing business for many years and the buyer reorders by mailing a new purchase order. Suppose further that the seller, upon receipt of the purchase order, telephones the buyer and tells him that quantities of the desired commodity are in short supply and, accordingly, he can only ship a lesser quantity and must do so at a higher price. And that thereupon an oral contract is reached for delivery of a lesser quantity at a higher price, and the goods are in fact shipped and accepted, but, as in this case, no writing is sent after the telephone conversation before shipment and acceptance. Under the majority opinion, the seller in such a case not only could not recover the higher price, but also could be required to respond in damages for failing to deliver the quantity stated in the purchase order at the lower price there stated. That simply is not the law. See 3 Corbin on Contracts, § 577, pp 385–388; *cf. Sams* v. *Feldman* (1955), 342 Mich 10, 13.

plaintiff to testify that before he rendered performance the parties had entered into a separate oral agreement concerning the subject matter of the writing.

It is entirely true that if the plaintiff in this case had rendered performance required by the purchase order without objecting to its provisions plaintiff might be found thereby to have accepted the provisions of the purchase order.[5] By failing to object the plaintiff might be deemed to have agreed that the purchase order superseded any earlier oral contract. But the plaintiff's representative testified—without contradiction by the defendant—that he did object, and that when he did so the defendant's representative agreed that the objected-to provision of the purchase order would not supersede the alleged earlier oral contract, and, in that regard, the oral contract would govern. It is that testimony, no reference to which is made in the majority opinion, which distinguishes this case from *Cohen* v. *Jackoboice* (1894), 101 Mich 409, on which the majority rely.

It is, of course, a factual question to be resolved by the trier of fact whether an oral contract was entered into before, and reaffirmed during conversations that took place after, receipt by the plaintiff of the purchase order.

The testimony of the plaintiff's representative[6] was corroborated by one of the defendant's former

---

[5] See, 1 Corbin on Contracts, § 70, p 288.

[6] The trial judge, of course, was not required to credit Hexham's testimony. Hexham was an interested witness; on that ground alone the judge might properly have rejected his testimony. 5 Callaghan, Mich Pleading & Practice (2d ed), § 37.205, pp 557, 558; MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158); *Goppelt* v. *Burgess* (1902), 132 Mich 28, 30; *Ball-Barnhart-Putman Co.* v. *Lane* (1903), 135 Mich 275.

There is no reason, however, to believe that the trial judge did not believe Hexham and Lerchen. Indeed, the judge must have concluded that Hexham was a credible witness; unless he reached that conclusion, he could not have found, as he did, that an oral contract

employees. The defendant did not produce at the
trial the person in its employ with whom plaintiff's
representative said he had the conversations.[7]

The defendant does not seek to defend the trial
judge's decision adopting the purchase order as the
contract on the ground that it was based on a finding
of fact, and that such finding is not clearly erroneous.
The defendant does not assert that the judge con-
sidered, but chose not to believe or for other reasons
rejected, the testimony of plaintiff's witnesses and
found as a fact that the purchase order became the
contract. The defendant's brief is replete with state-
ments that the trial judge properly refused to con-
sider the testimony of the plaintiff's witnesses.[8]

That the trial judge did not disbelieve the plain-
tiff's witnesses is attested to by his finding that an
oral contract had in fact been entered into before
the defendant's purchase order was sent.[9] He stated,

had been entered. into before the purchase order was sent.    (See
footnote 9.)

[7] The trial judge did not rule that the testimony of the plaintiff's
witnesses, taken provisionally over the defendant's objection, was
inadmissible until after both parties had rested their cases.

The defendant's claim that the purchase order is the contract is
contradicted not only by the testimony of plaintiff's witnesses, but
also by the permissible negative inference which may be drawn
based on the defendant's failure to call Milton Dickson as a witness
to contradict the testimony of Benjamin Hexham and George Lerchen.
It is a well-established principle that if a party has it within his
power to call a witness and fails to do so, the trier of fact may
properly infer that if the missing witness were called his evidence
would support the opposing party. See *Brandt* v. *C. F. Smith & Co.*
(1928), 242 Mich 217, 222, and *Prudential Insurance Company of
America* v. *Cusick* (1963), 369 Mich 269, 285 (per Black, J., in
an opinion signed by three other justices).

[8] The following is an excerpt from the defendant's brief:

"The above purchase order being in writing, Judge Moore was
correct in refusing to permit the introduction of oral testimony to
vary its terms as to the painting of tenant partitions. Oral testi-
mony could only be introduced in the event of fraud or mistake,
neither of which were presented, alleged, proven or raised by this
appeal."

Similar statements are to be found in three other places in the
defendant's brief filed with our Court.

[9] The trial judge stated: "Now at this point, I would think that
the plaintiff had established a contract orally to do the painting

however, that the purchase order was "a written contract or at least a contract which was a subsequent contract reduced to writing which would be the binding contract between the parties unless there was fraud, mistake, or some other method of holding it ineffective." He added that since the "more recent offer to employ the plaintiff was in writing" and it was specific, the writing controlled. The judge, thus, took the position that a document bearing a date later than the date on which an oral contract was in fact entered into must, as a matter of law, be deemed to supersede the oral contract, even though the party to be charged never signed the document.

A document cannot prove itself.[10] There is no rule of law which required the plaintiff to reject in writing the defendant's purchase order.[11] Nor is there any rule of law which required the plaintiff to send the defendant a confirmatory written memorandum after the conversation alleged to have taken place following receipt by the plaintiff of the defendant's purchase order.

It is entirely understandable that the plaintiff and the defendant who, according to the plaintiff, had done business for over twenty years, much of it pursuant to oral contracts, might also on this occasion have entered into an oral contract. A document not signed by the plaintiff has no greater sanctity than the oral contract the trial judge found was entered into before the purchase order was sent.

As just mentioned, the trial judge found that the parties entered into an oral contract which obligated the plaintiff to paint the building, and that this contract was agreed upon before the purchase order was

---

other than the partition painting, later to be constructed because of the uncertainty of the tenancy partitions. And an oral contract, followed by performance, would be a binding contract."

[10] 3 Corbin on Contracts, § 582, p 448; 9 Wigmore on Evidence, § 2430, pp 102–104; *Tuuk* v. *Andersen* (1969), 21 Mich App 1.

[11] *Tuuk* v. *Andersen, supra.*

sent by the defendant to the plaintiff. The judge found further that under the oral contract the work to be done was "the painting other than the partition painting." (See footnote 9.) Thus, when the defendant subsequently sent the purchase order requiring the plaintiff to paint the partitions, it was attempting to change the oral contract. This the defendant could not do without the plaintiff's agreement to the change.[12]

"An exact and unconditional acceptance of an offer is not afterwards turned into a conditional acceptance so as to invalidate the contract by an improper interpretation of the terms of this contract by one of the parties or by his attempt to alter the terms of the contract in some respect." 1 Corbin on Contracts, § 85, p 367.

"The so-called confirmation or acceptance was but an offer to change the terms of the agreement and was not accepted by defendant." *Goldsmith* v. *Stiglitz* (1924), 228 Mich 255, 258.

This case should be remanded for the taking of additional testimony, and for findings of fact on the issue whether the conversation which the plaintiff alleges took place following its receipt of the purchase order regarding the disputed painting work did in fact take place, and for further proceedings after that factual issue is resolved.

---

[12] See *Shepherd Hardwood Products Co.* v. *Gorham Brothers Company* (1923), 225 Mich 457, 463, 464; *American Parts Co., Inc.,* v. *American Arbitration Association* (1968), 8 Mich App 156, 174; *Gongola* v. *Yaksich* (1966), 3 Mich App 676, 679; *Peck* v. *Miller* (1878), 39 Mich 594, 596; *The Frederick Raff Company* v. *Murphy* (1929), 110 Conn 234 (147 A 709); *Cook* v. *Kerr* (Mo App, 1917), 192 SW 466; *Baker* v. *Dawson* (1958), 216 Md 478 (141 A2d 157); 17 CJS, Contracts, § 50, p 707.