CONSUMERS POWER COMPANY v TELESYSTEMS, INC

Docket No. 43750. Submitted November 14, 1979, at Lansing.—Decided March 5, 1980. Leave to appeal denied, 409 Mich 893.

Defendant, Telesystems, Inc., dba Owosso Cable TV Company (Telesystems), had a contract with plaintiff, Consumers Power Company (Consumers), permitting them to rent Consumers' power transmission poles for its cable TV wires at a rate of $3.90 per pole per year. After operating under the contract for some time, Consumers notified Telesystems that the annual fee was being raised to $5.40 per pole. Defendant continued to use plaintiff's poles and make annual payments at the $3.90 per pole rate. Plaintiff commenced an action in the Shiawassee Circuit Court to collect the difference between the $5.40 rate charged and the $3.90 rate paid. The court, Peter J. Marutiak, J., granted accelerated judgment for defendant on the basis that the court had no jurisdiction to settle the dispute by virtue of the 1978 amendments to the Federal Communications Act which placed exclusive jurisdiction in the Federal Communications Commission or the Public Service Commission. Plaintiff appeals. *Held:*

The circuit court has jurisdiction to settle a rate dispute between a regulated utility and an unregulated company over the rental fee to be paid for the use of the utility's poles by the company for the time period from the date the controversy arose until the Public Service Commission exercises its jurisdiction to regulate that rate by making an order.

Reversed and remanded.

COURTS — JURISDICTION — PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION.

The circuit court has jurisdiction to settle a rate dispute between a regulated utility and an unregulated company over the rental fee to be paid for the use of the utility's poles by the company for the time period from the date the controversy arose until the Public Service Commission exercises its jurisdiction to regulate that rate by making an order.

REFERENCE FOR POINTS IN HEADNOTE
[1] 64 Am Jur 2d, Public Utilities §§ 89, 133, 134.

*James W. Dempsey,* for plaintiff.

*Clark, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Sheila A. Kinney),* for defendant.

Before: T. M. BURNS, P.J., and CYNAR and A. M. BACH,* JJ.

T. M. BURNS, P.J. Plaintiff, Consumers Power Company, appeals of right a November 6, 1978, circuit court judgment granting defendant's motion for accelerated judgment. We reverse.

Plaintiff's November 22, 1976, complaint alleged that under a contract between Consumers and the defendant cable TV Company the latter had been permitted to rent Consumers' power transmission poles for its cable TV wires. In compensation for use of the poles defendant was required to pay Consumers a yearly fee of $3.90 per pole. After operating under this contract for some time, Consumers notified defendant that effective September 1, 1974, the annual pole attachment fee would be increased to $5.40 per pole.

Defendant, together with several other cable television companies, formed a nonprofit corporation and filed a complaint in Kent County Circuit Court seeking, among other things, an injunction restraining Consumers from increasing the pole fee. On October 2, 1975, Consumers was granted summary judgment in the Kent County Circuit Court action. Nonetheless, defendant refused to sign a new contract providing for increased pole fees and continued to make yearly payments at the $3.90 per pole rate. Subsequently, Consumers

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

filed the instant action seeking as damages the difference between the rental fee it would have received at $5.40 per pole and the fee that it did receive at $3.90 per pole.

On September 21, 1978, defendant filed a motion for accelerated judgment which alleged that the circuit court lacked subject matter jurisdiction over the pole rental dispute because it involved a rate issue that should be determined by the Public Service Commission and because 1978 amendments to the Federal Communications Act placed exclusive jurisdiction over pole attachment disputes in the FCC, unless a state certifies that it regulates pole attachment rates. Defendant's motion for accelerated judgment was granted on October 23, 1978. Plaintiff now appeals and we reverse.

It is the contention of Consumers that although it is a regulated public utility, it also has private contract functions. The renting of pole space is such a private function and is not regulated by the Michigan Public Service Commission. Defendant responds that MCL 460.551 *et seq.;* MSA 22.151 *et seq.,* gives the Public Service Commission general authority to regulate the rates, terms and conditions of electricity distribution and that, on the basis of that authority, the Public Service Commission has asserted jurisdiction over pole attachment rates.

While cable television companies are not regulated by the Public Service Commission, companies that generate electricity, such as Consumers Power, are. See, *White v City of Ann Arbor,* 406 Mich 554, 564; 281 NW2d 283 (1979). It also appears that the Public Service Commission has, or is about to take, jurisdiction over the rates charged for attachments to poles owned by a regu-

lated utility.[1] Thus, Consumers' argument that the renting of pole space is a private activity over which the Public Service Commission has not asserted jurisdiction is untrue. However, the fact that primary jurisdiction over this suit is vested in the Public Service Commission is not sufficient justification for the circuit court's dismissal of this case.

This action can be severed into two parts. The aspect of this case concerning the setting of pole attachment rates is one for the Public Service Commission. However, orders of the commission operate prospectively only. *Muskegon Agency, Inc v General Telephone Co of Michigan,* 350 Mich 41, 53; 85 NW2d 170 (1957). Therefore, that aspect of this case concerning the fee that should be paid to Consumers for the period of time between September 1, 1974, and the date of any final rate order by the Public Service Commission is one that the circuit court properly could decide. Further, the Public Service Commission's primary jurisdiction over this controversy would not divest the circuit court of jurisdiction to rule on whether the defendant should be permitted to continue its use of Consumers' utility poles against the wishes of Consumers. While it might make good sense for a circuit court to hold this case in abeyance until the ruling of the Public Service Commission so that it would have the benefit of the Commission's expertise and findings, it need not do so.

With respect to defendant's arguments that Federal Communications Act amendments of 1978

[1] In a case unrelated to the instant one the Public Service Commission asserted jurisdiction over certain questions related to pole attachments under its authority to control and regulate the transmission of electricity between Michigan counties. See, *In the Matter of the Application of Consumers Power Company,* No. U-5545 (PSC, July 31, 1978).

place exclusive jurisdiction over pole attachment disputes in the FCC, unless a state certifies that it regulates pole attachment rates, we find that the plain language of the amendments supports defendant's interpretation of them.[2] The amendments clearly intend to cover all situations and leave no area in pole attachment disputes unregulated. Thus, even if the Public Service Commission had not assumed jurisdiction over pole attachment fee disputes, the Federal Communications Act would divest Michigan circuit courts of jurisdiction over such disputes arising after the effective date of the amendments. However, we will not apply the FCC amendments retroactively so as to affect the juris-

---

[2] In pertinent part, the amendments provide:

"(4) The term 'pole attachment' means any attachment by a cable television system to a pole, duct, conduit, or right-of-way owned or controlled by a utility.

"(b)(1) Subject to the provisions of subsection (c) of this section, the Commission shall regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable, and shall adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms and conditions. * * *

"(2) Within 180 days from the date of enactment of this section the Commission shall prescribe by rule regulations to carry out the provisions of this section.

"(c)(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.

"(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that—

"(A) it regulates such rates, terms, and conditions; and

"(B) in so regulating such rates, terms and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.

"(d)(1) For purposes of subsection (b) of this section, a rate is just and reasonable if it assures a utility the recovery of not less than the additional costs of providing pole attachments, nor more than an amount determined by multiplying the percentage of the total usable space, or the percentage of the total duct or conduit capacity, which is occupied by the pole attachment by the sum of the operating expenses and actual capital costs of the utility attributable to the entire pole, duct, conduit, or right-of-way." 47 USC 224(a)(4)-(d)(1).

diction of the circuit court to determine the amount of any pole rental fees that accrued before the amendments took effect.

We decline to consider issues raised by Consumers in its motion for summary judgment that were not decided by the lower court.

Remanded for further proceedings.